UNITED STATES v. PENNSYLVANIA CENTRAL COAL CO. et al.

(District Court, W. D. Pennsylvania.   June 29, 1918.)

No. 35.

1. WAR ⬧4—POWERS OF CONGRESS—PRICE OF COAL.
    Act Cong. Aug. 10, 1917, c. 53, § 25 (Comp. St. 1918, § 3115⅛q), authorizing the President to fix the maximum price for coal and to make it an offense to demand more than the price fixed, is a measure necessary for the efficient prosecution of war and within the constitutional powers of Congress, though it imposes restrictions which in time of peace might be unlawful.

2. CONSPIRACY ⬧43(5)—INDICTMENT—DESCRIPTION OF OBJECT.
    An indictment under Act Cong. Aug. 10, 1917, c. 53, § 25 (Comp. St. 1918, § 3115⅛q), authorizing the fixing of the price of coal by the President, which charges that defendants with full knowledge that the price had been fixed conspired to demand a greater price with allegation of overt acts, is sufficient, though an indictment for the specific offense would have had to allege both the price fixed and the price demanded.

3. CONSPIRACY ⬧43(5)—INDICTMENT—OVERT ACTS.
    An indictment for conspiracy need not allege in what manner the overt acts tended to effect the purpose of the conspiracy, it being sufficient to allege that the overt acts were done to effect the object of the conspiracy.

4. CONSPIRACY ⬧43(6)—INDICTMENT—REQUISITE.
    An indictment for conspiracy, which sets forth the names of the conspirators and alleges that the conspiracy was to commit an offense against the United States, the nature of the offense, the time and place, and the overt acts committed to execute the conspiracy, is sufficient.

The Pennsylvania Central Coal Company and others were indicted for conspiracy. On demurrers to the indictment. Demurrers overruled.

R. L. Crawford, U. S. Atty., of Pittsburgh, Pa.

Nash Rockwood, of New York City, for Thos. F. Barrett, Pennsylvania Coal Co., and Cambria & Eastern Coal Co.

Diamond & Zacharias, of Pittsburgh, Pa., for J. Harper Adams.

THOMSON, District Judge. The Pennsylvania Central Coal Company, the Cambria & Eastern Coal Company, and Thomas F. Barrett, have been indicted at the above number and term, with others, for conspiracy to violate section 25 of the act of Congress, approved August 10, 1917 (40 Stat. 284, c. 53 [Comp. St. 1918, § 3115⅛q]). These three defendants have demurred, filing very numerous reasons in support thereof. The indictment contains three counts, which differ only in the several overt acts charged to have been committed in execution of the conspiracy. The indictment charges that the defendants conspired together to commit an offense against the United States, to wit, to violate the provisions of section 25 of an act of Congress approved August 10, 1917, entitled "An act to provide further for the national security and defense by encouraging the production, conserving the supply, and controlling the distribution of food products and fuel," and the regulations issued thereunder by Woodrow Wilson, President of the United States, and Harry A. Garfield, United States Fuel Administrator. That is, that the defendant corporations engaged in the business of jobbers of coal, Thomas F. Barrett, president of the Pennsylvania Central Coal Company, and John Harper Adams, secretary and treasurer of the Tri-State Coal & Coke Company, with full knowledge that Woodrow Wilson, President of the United States, had fixed, pursuant to the authority conferred by the said act of Congress, a maximum price for the sale of bituminous coal, did unlawfully conspire to ask, demand, and receive from certain persons therein named, and many others, a higher price per ton for bituminous coal at the mine than the maximum price fixed by the President of the United States in pursuance of the power upon him conferred by the said act of Congress. This is the substance of the charge in each count, followed in each count by certain overt acts charged to be in execution of the conspiracy.

The demurrer alleges: That the acts charged do not constitute a crime. That the facts constituting the alleged crime are not set forth with certainty, as required by law. That the indictment is not direct or certain in the description of the offense charged or attempted to be charged against the defendants. That, under the twenty-fifth section of the said act of Congress, the authority to fix and publish maximum prices was vested solely in the Federal Trade Commission, and the indictment does not aver that a maximum price for the sale of bituminous coal was at any time fixed or published by the Federal Trade Commission. That the indictment does not charge that any maximum price was fixed for the particular locality in which the several shipments of coal specified in the indictment were purchased. That it does not charge that the defendants demanded or received a higher price for the sale of the coal than they were permitted to do under said act, and that said section of the act of Congress is not within the power of

Congress to enact, and is violative of the fourth amendment of the Constitution. That it unlawfully deprives the citizen of his right to freely contract. That it attempts unlawfully to empower the federal authorities to regulate and govern intrastate traffic, thus illegally interfering with the property right of the citizen to freely contract within the state. That it deprives the defendants of the just and equal protection of the law. That it creates an unjust discrimination in the sale of commodities. And lastly that, the crime attempted to be charged being a felony, the alleged conspiracy is merged therein upon the completion of the alleged felonious offense.

[1] As to the constitutionality of the act: We are engaged in a great war, involving not only the fundamental rights of the nation and her people, but, in case of an adverse issue, the very existence of the republic itself. This war, constitutionally declared by Congress, requires the raising, equipping, and supporting of armies and navies, of which the President of the United States is the commander in chief. That the safety of the republic is the first law, is as true now as when the Romans so declared. To the high office of commander in chief necessarily belong many inherent powers. He has authority, without any act of Congress, to exercise all belligerent rights. He may institute a blockade, levy contributions on the enemy, and authorize the military commanders to form a civil and military government in the conquered territory. He may establish there courts of justice. When a state of war exists, the whole nation is pledged to its successful prosecution. Its resources must be controlled and conserved, that large armies may be maintained in the field. Restrictions which in times of peace would be oppressive and unlawful become in times of war a legal necessity. Prices must be regulated and controlled, that the strong may not oppress the weak, nor be permitted to extort unreasonable profits through the stress and exigencies of war. The section of the act of Congress here in question, seeking to regulate the prices of coal and coke, is clearly a measure necessary for the efficient prosecution of the war; and, as the welfare of the nation is higher than the rights of any state, I cannot doubt that it is well within the constitutional power of Congress to enact.

[2] To constitute an indictment under this section, it is, of course, necessary to charge that the conspiracy was to do an act made a crime by the laws of the United States, the offense under section 37 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1096 [Comp. St. § 10201]), consisting of the unlawful combination and the doing of some act in furtherance of it. The offense which the defendants are charged with conspiring to commit, to wit, "to violate the provisions of section 25 of the act of Congress approved August 10, 1917, entitled 'An act to provide further for the national security and defense by encouraging the production, conserving the supply, and controlling the distribution of food products and fuel,' and the regulations issued thereunder by Woodrow Wilson, President of the United States, and Harry A. Garfield, United States Fuel Administrator."

The manner of its violation is set forth to be that the defendants, engaged in the business of jobbers of coal, with full knowledge that the

President had fixed a maximum price for the sale of coal, unlawfully combined to demand and receive from certain parties named a higher price per ton than the maximum price fixed by the President. Under the act, it is the President of the United States who is authorized to fix the price, and to establish rules for the regulation of and to regulate the production, sale, shipment, and so forth. "Said authority and power may be exercised by him in each case through the agency of the Federal Trade Commission during the war or for such part of said time as in his judgment may be necessary." That portion of the indictment which avers a violation of the regulations issued by the President and the Fuel Administrator may be rejected as surplusage, in view of the specific definition of the offense which follows these words. If the charge was the commission of a substantive offense, namely, the sale of coal above the price fixed, it would be necessary in the indictment to aver both the fixed price and the price of sale. Not so, however, when the offense is a conspiracy to ask, demand, and receive a higher price than that fixed by the President.

[3] I think the indictment is sufficiently specific to define and identify the offense charged, so as to enable the defendants to prepare their defense thereto. It is not necessary that the offense which is intended to be committed as a result of the conspiracy should be described with the particularity required in an indictment in which such matter is charged as a substantive crime. Certainty to a common intent is all that is required. Neither is it necessary in alleging overt acts in the indictment, committed by one of the conspirators, to set forth in what manner the several overt acts tended to effect the purpose of the conspiracy. It is sufficient to allege that such acts were done to effect its object. Houston v. United States, 217 Fed. 854, 133 C. C. A. 562.

It was said in United States v. McCord (D. C.) 72 Fed. 163:

"Any overt act, however slight, intended to effectuate the object of the conspiracy, and whatever its character may be, whether it is itself criminal or * * * innocent in its nature, is sufficient to fix the offense and to make it indictable."

[4] The indictment sets forth the names of the alleged conspirators, charged with a conspiracy to commit an offense against the United States, the nature of the offense, the time and place, with the overt acts committed in and for the purpose of executing them. These, in my opinion, are sufficient to sustain the indictment. Hyde v. United States, 225 U. S. 347, 32 Sup. Ct. 793, 56 L. Ed. 1114, Ann. Cas. 1914A, 614.

The demurrers to the indictment are therefore overruled.