UNITED STATES v. FORD.

SAME v. MATTHEW ADDY CO.

(District Court, S. D. Ohio, W. D. February 26, 1920.)

Nos. 1680, 1681.

1. INDICTMENT AND INFORMATION ⊕➾119—REFERENCES TO STATUTES ARE SUR- PLUSAGE.

It is the allegations of fact in an indictment which charge the offense, and the references therein to the statutes are surplusage.

2. WAR ⊕➾4—PRESIDENT, IN FIXING PRICES, NEED NOT ACT THROUGH FEDERAL TRADE COMMISSION.

The provision of the last clause of the first paragraph of Lever Act, § 25 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛q), that the authority and power thereby conferred on the President to fix the price of coal and coke "may" be exercised through the agency of the Federal Trade Commission, during the war or for such part of said time as in his judgment may be necessary, is permissive, and he is not re- quired to exercise such authority through the commission.

3. WAR ⊕➾4—FEDERAL TRADE COMMISSION MAY FIX PRICES ONLY AFTER DI- RECTION FROM PRESIDENT TO MAKE INVESTIGATION.

Under the thirteenth paragraph of Lever Act, § 25 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛q), providing that the Federal Trade Commission, having completed an inquiry respecting any commod- ity in any locality, shall, if the President has decided to fix prices at which such commodity shall be sold, fix and publish maximum prices, is contingent, and not effective until the commission is directed by the President to investigate the cost of production under the eleventh para- graph.

Benjamin N. Ford and the Matthew Addy Company were indicted for selling coal as jobbers at a price including a profit in excess of that fixed by Executive Order of August 23, 1917. On motion to quash the indictment. Motion denied.

Each of the indictments is in the following form:

In the District Court of the United States of America for the Southern District of Ohio, Western Division.

Southern District of Ohio, Western Division—ss.:

Of the October Term in the Year Nineteen Hundred and Nineteen.

*First Count.* Act of August 10, 1917, especially sections 1, 2, 3, 4, and 25 thereof, and the executive order of the President of the United States dated August 23, 1917.

The grand jurors for the United States of America, impaneled and sworn in the District Court of the United States for the Western Division of the Southern Judicial District of Ohio, at the October term thereof, in the year nineteen hundred and nineteen, and inquiring for that division and district, upon their oaths present:

That by reason of the existence of a state of war it was essential to the national security and defense, for the successful prosecution of the war, and for the support of the army and navy, to secure an adequate supply and distribution, and to facilitate the movement of certain things in said act called "necessaries," which said things so denominated in said act as "nec- essaries" included fuel; and to prevent, locally or generally, scarcity, mo- nopolization, hoarding, injurious speculation, manipulations, and private con- trols, affecting the supply, distribution and movement of such "necessaries,"

⊕➾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

263 F.—29

including fuel, and to establish and maintain governmental control of such "necessaries," including fuel, during the war, the Congress of the United States (by an act approved August 10, 1917, commonly known as "the National Defense Act" and especially sections 1, 2, 3, 4, and 25 thereof) authorized the President to make such regulations and to issue such orders as were essential to carry out the provisions of said act and, whenever in his judgment the same was necessary for the efficient prosecution of the war, to fix the price of coal and coke, wherever and whenever sold, either by producer or dealer, to establish rules for the regulation of and to regulate the method of production, sale, shipment, distribution, apportionment, or storage thereof among dealers and consumers, domestic and foreign, excepting that the regulations and prices so fixed and published should not be construed as invalidating any contract in which prices were fixed, made in good faith, prior to the establishment and publication of such prices and regulations. That pursuant to the provisions of the act above referred to and under its authority, the President of the United States on August 23, 1917, issued an Executive Order establishing and regulating the prices and margins of coal jobbers to apply to the intrastate, interstate and foreign commerce of the United States in which said Executive Order it was provided, among other things, that

"1. A coal jobber is defined as a person (or other agency) who purchases and resells coal to coal dealers or to consumers without physically handling it on, over, or through his own vehicle, dock, trestle, or yard.

"2. For the buying and selling of bituminous coal a jobber shall not add to his purchase price a gross margin in excess of 15 cents per ton of 2,000 pounds, nor shall the combined gross margins of any number of jobbers who buy and sell a given shipment or shipments of bituminous coal exceed 15 cents per ton of 2,000 pounds."

That during the months of September, October, and November, 1917, the Matthew Addy Company was, and still is, a corporation organized and existing under the laws of the state of Ohio, and was, in the city of Cincinnati, county of Hamilton, and state of Ohio, and within the jurisdiction of this honorable court, engaged in and conducting business as a coal jobber as defined in said Executive Order, and that Benjamin N. Ford, late of the said city of Cincinnati, county of Hamilton, and state of Ohio, during all of said times was, and still is, the vice president of said the Matthew Addy Company, and in such official capacity had charge, control, supervision, and direction of the activities, negotiations, and contracts of said company in so far as they related to the conduct of its business as a coal jobber. That continuously during the said months of September, October, and November, 1917, a state of war existed between the United States of America and the Imperial German Government and its allies, and the law, orders, and regulations above referred to were in full force and effect.

The said grand jurors further present that on or about the 10th day of September, in the year nineteen hundred and seventeen, in the said city of Cincinnati, county of Hamilton, and state of Ohio, and within the jurisdiction of this honorable court, said Benjamin N. Ford, acting in his capacity of vice president, as aforesaid, of said the Matthew Addy Company, doing business as a coal jobber as aforesaid, willfully, unlawfully, knowingly, and feloniously did ask, demand, and receive from Frey Bros., doing business in Chicago, Cook county, Illinois, for a certain quantity of bituminous coal, to wit, about 50.30 tons of 2,000 pounds each of Pocahontas run of mine coal, a price of three dollars and fifty ($3.50) cents per ton, f. o. b. at the mines producing said coal, which said price of three dollars and fifty ($3.50) cents per ton included a profit or gross margin to it, said the Matthew Addy Company, as such coal jobber, as aforesaid, of twenty-five (25¢) cents per ton, and which said profit or margin of twenty-five (25¢) cents per ton was, and was well known by, said Benjamin N. Ford, vice president, as aforesaid, of said the Matthew Addy Company, to be in excess of the profit or gross margin of 15¢ per ton of 2,000 pounds permitted by the law, executive order, and regu-

lations above referred to, to be added to the purchase price of said jobber, and the grand jurors further present that said the Matthew Addy Company did not have any contract with said Frey Brothers, made in good faith prior to said 23d day of August, 1917, in which said contract, the price for the purchase and sale of said coal was fixed, which fact was well known to the said Benjamin N. Ford, vice president of said the Matthew Addy Company, as aforesaid.

Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

Stuart R. Bolin, U. S. Atty., of Columbus, Ohio.

Nelson B. Cramer and Julius R. Samuels, both of Cincinnati, Ohio, for defendants.

PECK, District Judge. On motion to quash the indictment. Identical questions are presented in each case.

[1] The indictment is not multifarious. The offense is charged by the allegations of fact, not by the references to laws. The latter are surplusage.

[2] The indictment is sufficient. The word "may" in the last clause of the first paragraph of section 25 of the National Defense (Lever) Act (40 Stat. 276 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛q]) is permissive. The President is thereby empowered, not required, to exercise his authority to regulate the prices and production of coal through the Federal Trade Commission in each instance. This is the ordinary significance of the word. United States v. Lexington Mill Co., 232 U. S. 399, 34 Sup. Ct. 337, 58 L. Ed. 658, L. R. A. 1915B, 774. And that it was so intended is clear from the context. It may be noted that the third paragraph vests in the President a similar optional discretion to act through the commission or otherwise.

[3] The authority of the commission under the thirteenth paragraph of the section is to fix local prices only after direction by the President to make the investigation authorized by the eleventh paragraph. The grant of powers to the commission is contingent, and does not become effective until that direction is given. Such grant does not, therefore, require the construction of the first paragraph, to the effect that the President can act only through the commission, for which the defendant contends. United States v. Pennsylvania Central Coal Co. (D. C.) 256 Fed. 703.