### UNITED STATES v. FORD.

### SAME v. MATTHEW ADDY CO.

(District Court, S. D. Ohio, W. D. May 29, 1920.)

Nos. 1680, 1681.

Constitutional law ⚖️298 (1)—Lever Act, authorizing fixing price of coal, constitutional.

> Lever Act Aug. 10, 1917, § 25 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛q), authorizing the President to fix the price of coal and coke as a war measure, *held* not unconstitutional as depriving persons of property without due process of law.

Criminal prosecutions by the United States against Benjamin N. Ford and against the Matthew Addy Company. On demurrers to indictments. Overruled.

See, also, 263 Fed. 449.

James R. Clark, U. S. Atty., and Allen C. Roudebush, Asst. U. S. Atty., both of Cincinnati, Ohio.

Nelson B. Cramer and Julius R. Samuels, both of Cincinnati, Ohio, for defendants.

PECK, District Judge. On demurrer to indictment. The principal question raised is whether section 25 of the National Defense (Lever) Act, authorizing the President to fix the price of coal during the continuance of the war, is unconstitutional, as depriving of property without due process of law.

While the war created no new powers in Congress, it undoubtedly required the exercise of powers latent in times of peace. McKinley v. U. S., 249 U. S. 397, 39 Sup. Ct. 324, 63 L. Ed. 668. The right to regulate business, including the fixing of prices for essential commodities, in furtherance of a constitutional power of the United States, exists when the business sought to be regulated is one in which

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the public has an interest beyond that of the persons who participate in the individual transactions therein. Munn v. Illinois, 94 U. S. 133, 24 L. Ed. 77. Businesses which are purely private in times of peace may become matters of vital public concern in times of war. The late war was a marshaling, not only of the man power of the nations engaged, but of their total resources and economic strength. The production and distribution of coal, the chief source of industrial energy, was a business in which the public had a vital interest over and above that of the individuals engaged in the particular transactions; therefore it was a business which Congress had the right to regulate.

It is true that the act afforded no opportunity for judicial review of the reasonableness of the prices fixed by the President, and this has been determined, under ordinary circumstances, with reference to railroad and other rates, to be want of due process of law. Chicago, Milwaukee & St. Paul Ry. v. Minnesota, 134 U. S. 418, 10 Sup. Ct. 462, 702, 33 L. Ed. 970; Minnesota Rate Cases, 230 U. S. 352–434, 33 Sup. Ct. 729, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, Ann. Cas. 1916A, 18; Oklahoma Operating Co. v. Love, 252 U. S. 331, 40 Sup. Ct. 338, 64 L. Ed. ——. Decided March 22, 1920; Holter Hardware Co. v. Boyle (D. C.) 263 Fed. 134. But due process of law is not to be tested by form of procedure merely (Cooley, Const. Lim. [7th Ed.] p. 506), and varies with the subject-matter and necessities of the situation.

Public danger warrants the substitution of executive process for judicial process. Moyer v. Peabody, 212 U. S. 78, 29 Sup. Ct. 235, 53 L. Ed. 410. During the war, when the marshaling of the industrial powers of the nation was imperative, prompt action was demanded, and extended investigations, such as are necessary to judicial review of the economic orders essential to the prosecution of the war, were impractical and impossible; and, under the circumstances then existing, the fixing of prices in public industries necessary for the prosecution of the war, by the President, under the authority of the act of Congress, was not the deprivation of due process of law; nor was the reposing of such power in the President unconstitutional, as a delegation of either legislative or judicial power. U. S. v. Penn. Central Coal Co. (D. C.) 256 Fed. 703.

Demurrer overruled.