### A. M. HOLTER HARDWARE CO. et al. v. BOYLE et al.

(District Court, D. Montana. January 13, 1920.)

No. 149.

1. CONSTITUTIONAL LAW ⬅⬲298(1)—STATE STATUTE REGULATING COMMERCIAL PRICES VOID.

Act Mont. Aug. 11, 1919 (Laws Ex. Sess. 1919, c. 21), creating a state trade commission, with power to regulate prices and profits, including those in ordinary mercantile business, *held* unconstitutional and void, as depriving persons affected of their property without due process of law.

2. CONSTITUTIONAL LAW ⬅⬲45—CONSTITUTIONALITY IS QUESTION FOR THE COURTS.

Whether, in view of the Constitution, legislation in exercise of a state's police power is a new application of old and recognized principles, or is the creation of a new and repugnant principle, is in final determination for the courts.

In Equity. Suit by the A. M. Holter Hardware Company and others against Daniel Boyle and others. Decree for complainants.

Gunn, Rasch and Hall, of Helena, Mont., and Johnston and Coleman, of Billings, Mont., for plaintiffs.

S. C. Ford, of Helena, Mont., Otto A. Gerth, of Great Falls, Mont., and E. G. Toomey, of Helena, Mont., for defendants.

BOURQUIN, District Judge. This is a conventional suit to restrain enforcement of state legislation which provides for a trade commission to regulate business, and when and where it pleaseth to "establish maximum prices or a reasonable margin of profit" in respect to all commodities, and, curiously enough, burial lots in cemeteries for gain. The usual defenses of state immunity from suit, premature action, and adequate remedy at law are foreclosed by familiar decisions of the Supreme Court.

[1] Plaintiffs' principal and determinative contention is that legislative regulation of prices in ordinary mercantile business is repugnant to the due process clause of the Fourteenth Amendment. At the outset defendants note that the enactment is of August 11, 1919 (Laws Ex. Sess. 1919, c. 21), by an extraordinary legislative session to meet a

---

⬅⬲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

drouth emergency, and that it includes a declaration that it is an emergency law, immediately necessary for public health, peace, and safety. They allege that it is supported by public opinion and prevailing morality, and that all this, in connection with the war and its consequences in respect to production, supplies, demand, prices, and abuses, renders conclusive upon the courts the legislative judgment that the situation is one subject to the principle of legislative price regulation consistent with the Fourteenth Amendment.

If this were so, the inalienable rights guaranteed by the Constitution would be at the mercy of Legislatures. Fundamental rights are independent of legislative will, and no legislative declaration can foreclose inquiry whether or not they are infringed by legislative enactment. Emergency, opinion, morality, changes wrought by time and circumstances, often justify exercise of powers that Legislatures have; but they create no new powers. It is true the Constitution is not a barrier to changes in state policy and law to suit new circumstances and conditions, not a barrier to new application of its principles; but it does oppose all changes that would avoid or supplant its principles with others, however calculated to suit the needs of the hour and the temper of the times. Its generic terms open always to include newly created species. See Merrick v. Holsey & Co., 242 U. S. 587, 37 Sup. Ct. 227, 61 L. Ed. 498. Hence public opinion, prevailing morality, emergencies, may warrant denouncement as a crime to-day what was lawful yesterday; may do in behalf of public welfare to-day what could not be done yesterday; may regulate a business or employment to-day that could not be yesterday.

[2] Whether, in view of the Constitution, legislation in exercise of a state's police power (which is nothing mysterious, but only another name for the state's power of self-government) is of a newly created species, or is of a new genus, is a new application of old principles, or is creation of a new and repugnant principle, is in final determination for the courts. See Hamilton v. Warehouse Co., 251 U. S. 146, 40 Sup. Ct. 106, 64 L. Ed. ——, Dec. 15, 1919; Wilson v. New, 243 U. S. 348, 37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024; Buchanan v. Warley, 245 U. S. 70, 38 Sup. Ct. 16, 62 L. Ed. 149, L. R. A. 1918C, 210, Ann. Cas. 1918A, 1201; Adams v. Tanner, 244 U. S. 591, 37 Sup. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; Los Angeles v. Corporation, 251 U. S. 32, 40 Sup. Ct. 76, 64 L. Ed. ——, Dec. 8, 1919.

Legislative regulation of prices in business and employments that are of public interest, concern, and consequences is consistent with the Fourteenth Amendment. Like regulation in ordinary mercantile business and ordinary employments, all of which are purely private, is repugnant to said amendment. Time and circumstances may convert some of the latter into the former—so change their character and incidents that from purely private they are transformed into those of public interest, concern, and consequence. When this occurs, they become subject to legislative price regulation, a new species of the genera of business of public interest, a new application of the old principle of regulation.

In the instant suit emergencies, public opinion, prevailing morality, war and its consequences, and legislative fiat have not transformed ordinary mercantile business into business of public interest. Despite them, the character and incidents of ordinary mercantile business remain unchanged. It is still open to and followed by many persons, rather than by a few, ranging from push carts, through all gradations, to mail-order emporiums, independent and in competition, wherein are constant new adventurers, some succeeding, some failing, and equally constant passing of the old, affording extensive choice to the purchasing public. Its transactions are independent, individual, and of no material consequence to any one, save to the seller and buyer in each thereof, and upon whom alone the effects fall. It remains purely private in character and incidents.

In defining what business is of public interest, concern, and consequence, and accordingly subject to legislative price regulation, the Supreme Court says it can be best explained by examples, and cites public utilities, insurance, and grain storage, and applies the principle to wages in public utilities and to wages of women and minors. It further says that, though there is some public interest in every person and in their every transaction, this is not the public interest in respect to which alone there is legislative power to regulate prices; that this latter public interest exists only when it is a "broad and definite public interest," arising by reason of the nature of the business, wherein its proper conduct concerns more than the parties to any single transaction, wherein by reason of peculiar circumstances the business sustains such relation to the public that they are affected by its consequences—in all, in marked contrast to ordinary mercantile business and ordinary employment. See German Alliance, etc., Co. v. Kansas, 233 U. S. 406, 34 Sup. Ct. 612, 58 L. Ed. 1011, L. R. A. 1915C, 1189.

From Munn v. Illinois, 94 U. S. 113, 24 L. Ed. 77, to Wilson v. New, 243 U. S. 347, 37 Sup. Ct. 298, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024, the Supreme Court has maintained that legislative price regulation in business of public interest is reasonable and consistent with the Fourteenth Amendment, and that the like regulation in ordinary mercantile business is unreasonable and repugnant to said amendment. The latter, but not the former, unreasonably interferes with right to follow any ordinary calling, to contract, to bargain, and so deprives of liberty and property without due process of law. In every case upholding price regulation, it is because the court or its majority was persuaded the business was not ordinary mercantile business, but was of public interest. And it is emphasized that in every case the justices were unanimous that price regulation in ordinary mercantile business is void. See, also, Terminal Co. v. Kutz et al., 241 U. S. 256, 36 Sup. Ct. 583, 60 L. Ed. 984, Ann. Cas. 1916D, 765; Chesapeake, etc., Co. v. Manning, 180 U. S. 247, 22 Sup. Ct. 881, 46 L. Ed. 1144; Stettler v. O'Hara, 243 U. S. 629, 37 Sup. Ct. 475, 61 L. Ed. 937.

That before the Revolution price regulation in ordinary mercantile business and employment was common in England, and in the American colonies to less extent, is not persuasive it is valid now, but rather

the contrary. The "due process" clause in Magna Charta does not deter Parliament (a continuous constitutional convention) from any enactment it believes will obviate or withstand rebellion. So was it in the colonies. But the Revolution was to and did establish a different system of government. American Constitutions distributed, balanced, and checked power otherwise than in England, to suit different people, land, institutions, and ideals. From their inception it has been assumed and accepted doctrine that by state Constitutions the people reserved to themselves the power to regulate prices in ordinary business and employment, and that by the Fourteenth Amendment they suspended the power so long as the "due process" clause endures. Their circumstances, conditions, character, disposition, ideals, and the times prompted them to accept the principle of free and unrestricted bargaining.

This construction of Constitutions is virtually a rule of property and a principle of government, not to be changed by Legislatures or courts in any circumstances, but only by the people by constitutional amendment. That other Legislatures and Congress, during the war enacted like laws, demonstrates that Montana's Legislature does not stand alone, but no more. It may be observed Congress proceeds under the war power, which is also subject to constitutional limitations, subject to the "due process" clause of the Fifth Amendment. Hamilton v. Warehouse Co., supra.

It may be further observed that, however it might be if the enactment was limited to the prime necessities and was a war measure, it is inconceivable that its all-embracing provisions, now when the war is over, save as a fiction perpetuating rather dictatorial powers, are necessary to public health, peace, and safety. It ranges from the street corner vendor of popcorn and bananas to the merchant prince, from coal to diamonds, from the babe's first swaddling band and cradle to the aged man's shroud, his coffin, and his grave. Trifles, necessities, luxuries—all are within its scope. As a whole the enactment would accomplish a complete reversal of the American system of business economics that has prevailed from the nation's birth. True, there is no federal control over any state in the matter of economic theories it will pursue, provided not counter to constitutional limitations. But that involved herein goes beyond economics, and virtually invades and changes the methods, if not the system, of government. Who will question the wisdom of the Constitution that this shall not be done, save by three-fourths of the states in concert?

Mindful of the familiar principles that control federal courts in consideration of the constitutionality of state legislation, it is believed the enactment at bar is within the inhibition of the Fourteenth Amendment, and it is so determined. If there be any decision, by a court of last resort, contrary hereto, it has not been cited and is unknown. The Bakers' Bread Cases—Mobile v. Yuille, 3 Ala. 140, 36 Am. Dec. 441; Guillotte v. New Orleans, 12 La. Ann. 432—do not take account of the constitutional provisions here involved.

A permanent injunction will issue. Decree accordingly.