No. 13879

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

RALPH EUGENE McBENGE,

Defendant and Appellant.

---

Appeal from: District Court of the Sixteenth Judicial District,
Honorable A. B. Martin, Judge presiding.

Counsel of Record:

For Appellant:

Claude I. Burlingame argued, Forsyth, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Mike McGrath argued, Assistant Attorney General,
Helena, Montana
John S. Forsythe, County Attorney, Forsyth, Montana

---

Submitted: December 8, 1977

Decided: JAN 18 1978

Filed: JAN 18 1978

Thomas J. Kearney
Clerk

Mr. Justice John C. Harrison delivered the Opinion of the Court.

This is an appeal from a conviction of possession of explosives resulting in a prison sentence of ten years.

No trial transcript has been submitted on appeal, and there is not a clear statement of facts by either party. The attack centers around the statute, the Information, and the affidavit in support of the state's motion for leave to file the Information.

Here, the affidavit and Information are the center of contention. The affidavit stated:

"Comes now John S. Forsythe, duly elected and qualified Rosebud County Attorney, after being first duly sworn upon his oath, deposes and informs the Court, as follows:

"That according to the statement of Charles E. Tallbull of Ashland, Montana, on February 12, 1977 at approximately 3:45 P.M. the defendant Ralph Eugene McBenge told the said Charles Tallbull that Tallbull must call the defendant's wife Delores McBenge or McBenge would blow them up. Charles Tallbull further states that he made several phone calls at the defendant's order and told a tribal policeman Frank Long Jaw to leave the area where Tallbull and a Beatrice Atkinson were held hostage in and around a trailer belonging to Ralph Carlott. According to Tallbull, the defendant further told Tallbull that if the defendant's wife was not back home by eight o'clock that day, February 12, 1977, the defendant was going to blow everyone up. According to Tallbull, Beatrice Atkinson and Ralph Carlott, who came to the trailer during the afternoon, were allowed to leave on the condition that Tallbull stayed. Charles Tallbull further states that while the defendant drove back and forth in his car in the driveway, Tallbull made an escape to the back of the trailer and up a hill.

"According to Deputy Sheriff Thomas Skinner, Skinner was called to the scene and observed McBenge leaving in his vehicle following the escape of Tallbull. Skinner states that the McBenge vehicle was driven first to the front of the Club Buffet Bar in Ashland, Montana and then to the front of the Ashland Bar in Ashland. Skinner relates that the several deputy sheriffs on the scene cleared the two bars of patrons and blocked traffic under Skinner's direction. According to Deputy Skinner, Skinner blocked the escape of the defendant's vehicle by parking his vehicle at the rear of the defendant's vehicle, thus blocking a rear movement, while the bar blocked a forward movement of the defendant's vehicle. According to Skinner, the defendant made a threat concerning the power of a bomb which he had and further demanded that his wife be returned to him. Deputy Skinner states that after a period of surveyance lasting approximately

two hours, the defendant went to sleep or lost consciousness from the previous consumption of alcohol and was arrested in his car in front of the Ashland Bar with components of an explosive Kinepak commercially manufactured explosive device connected with a blasting cap and two wires, one attached to a dry cell battery. The directions for use on the Kinepak containers and a visual observation of the firing mechanism and connected vessel indicated that the various bomb components had been prepared to be fired and activated by a touching of the second wire to the battery.

"This Information respectfully prepared for the Court this 15th day of February, 1977."

The Information charged the following (omitting the list of witnesses):

"John S. Forsythe, County Attorney of Rosebud County, deposes and says that on or about the 12th day of February, 1977, at Ashland, Rosebud County, Montana, the above named Defendant committed the offense of Sale or Manufacture of Maxim Silencers and Various Explosives for Wrongful Use, A Felony as specified in section 94-8-223 R.C.M. 1947, as amended.

"The facts constituting the offense are:

"Count I: That the defendant Ralph Eugene McBenge had in his possession a bomb or explosive compound with the intent that the said bomb or explosive compound shall be used for the injury or destruction of a trailer home which is the property of Ralph Carlat;

"Count II: That the defendant Ralph Eugene McBenge had in his possession a bomb or explosive compound with the intent that the said bomb or explosive compound shall be used for the injury or destruction of the Ashland Bar, the property of Vivian Vivian;

"Count III: That the defendant Ralph Eugene McBenge had in his possession a bomb or explosive compound with the intent that the said bomb or explosive compound shall be used for the destruction of Charles E. Tallbull;

"Count IV: That the defendant Ralph Eugene McBenge had in his possession a bomb or explosive compound with the intent that the said bomb or explosive compound shall be used for the injury or destruction of Deputy Sheriff Thomas Skinner;

"Count V: That the defendant Ralph Eugene McBenge had in his possession a bomb or explosive compound with the intent that the said bomb or explosive compound shall be used for the injury or destruction of Ralph Eugene McBenge."

Defendant presents six issues for review which can be consolidated into five:

1. The sufficiency of the affidavit;

2. The sufficiency of the information;

3. The constitutionality of section 94-8-223, R.C.M. 1947;

4. Whether section 94-8-223 had been impliedly repealed; and

5. The constitutionality of section 94-8-225, R.C.M. 1947.

The first issue concerns the sufficiency of the affidavit. The Information generally charges defendant with the possession of a bomb or explosive compound with the intent to injure two buildings (the trailer home of Ralph Carlat and the Ashland Bar) and three persons (Charles Tallbull, Deputy Sheriff Skinner, and defendant himself).

Defendant argues, without citing any authority, that the affidavit lacks probable cause to support these charges because of two basic deficiencies:

(1) As to all 5 counts, lack of reference to the possession by defendant of explosives in the vicinity of three persons and two occupied structures; and

(2) As to the buildings, lack of reference to lack of consent to destruction of the property by the owners.

The state argues that the affidavit describes in detail the continuing course of defendant's conduct, including various threats that he would blow everything up if his wife was not brought to him, continuous police surveilance for over two hours, and his final arrest in the possession of a commercially manufactured explosive set to be fired by the touching of one wire to a dry cell battery. The state also argues that objection by the owner to destruction of his property has never been an element of the offense.

Section 95-1301, R.C.M. 1947, provides:

"Leave to file information. (a) The county attorney may apply directly to the district court for permission to file an information against a named defendant. The application must be by affidavit supported by such evidence as the judge may require. If it appears that there is probable cause to believe that an offense has been committed by the defendant the judge shall grant leave to file the information, otherwise the application

- 4 -

shall be denied."

Here the district judge, on reading the affidavit, had probable cause to believe the offenses charged were committed by defendant.

The second issue concerns the sufficiency of the Information. Defendant alleges that the Information should have been quashed by the District Court because:

(1) It fails to state a public offense; and

(2) It is not framed in such language that a person of common understanding would know what is intended.

While each count of the Information alleges that defendant had the intent to destroy either a person or property, defendant complains that the Information fails to specify that the intent was "unlawful, willful, purposeful, or knowing." Defendant argues, again without reference to any authority, that bare intent to destroy property, without further specification, would not constitute a crime, and thus, to merely allege intent to destroy persons or property does not sufficiently show what conduct is prohibited. For example, defendant maintains that the destruction of a building with the consent of the owner would not be criminal conduct.

When the state charges that on a certain day at a certain time, defendant had possession of explosives with intent that the same be used for the destruction of named persons and property, clearly the facts constituting the offense are stated so that a person of common understanding would know what is intended. Section 95-1503(3), R.C.M. 1947.

The third issue is directed at the constitutionality of section 94-8-223, R.C.M. 1947. Section 94-8-223, at the time of this action, provided:

> "Sale or manufacture of Maxim silencers and various explosives for wrongful use a felony. Any person who shall make, manufacture, compound, buy, sell, give away, offer for sale or to give away, transport, or have in possession any Maxim silencer, bomb, nitroglycerin, giant, oriental, or thunderbolt powder, dynamite, ballistite, fulgarite, detonite, or any other explosive

compound, or any inflammable material, or any instrument or agency, with intent that the same shall be used in this state or anywhere else for the injury or destruction of public or private property, or the assassination, murder, injury, or destruction of any person or persons, either within this state or elsewhere, or knowing that such explosive compounds or such materials, instruments, or agencies are intended to be used by any other person or persons for any such purpose, shall be guilty of a felony, and upon conviction thereof shall be punished by imprisonment in the state prison for not less than five years nor more than thirty years, or by a fine of not less than one thousand dollars nor more than twenty thousand dollars, or by both such fine and imprisonment."

Defendant argues this statute is unconstitutionally vague and ambiguous. He relies upon this language from Clack v. Public Service Commission (1933), 94 Mont. 488, 503, 22 P.2d 1056, quoting Connally v. General Construction Co., 269 U.S. 385:

" * * * a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. * * * "

Again, the vagueness complained of is that the statute does not specify that the destruction of person or property be without the consent of the victims.

The state argues the purpose of criminal law is to protect individuals and public interests, section 94-1-102(1), R.C.M. 1947, and that "a private person may not excuse a criminal act." Gilbert v. United States, 359 F.2d 285 (9th Cir. 1966).

Issue four concerns the implied repeal of section 94-8-223. Defendant cites no authority, but argues that recent legislation dealing with criminal conduct by use of explosives impliedly repealed section 94-8-223. Section 94-6-105 and 69-1932, R.C.M. 1947, are set forth as follows:

"94-6-105. Possession of explosives. (1) A person commits the offense of possession of explosives if he possesses, manufactures or transports any explosive compound or timing or detonating device for use with any explosive compound or incendiary device, and:

"(a) has the purpose to use such explosive or device to commit any offense; or

- 6 -

"(b) knows that another has the purpose to use such explosive or device to commit any offense.

"(2) A person convicted of the offense of possession of explosives shall be imprisoned in the state prison for any term not to exceed twenty (20) years."

"69-1932. Possession of destructive device or explosive with felonious intent--penalty. (1) Every person who, with intent to commit a felony, has in his possession any destructive device or any explosive on a public street or highway, in or near any theater, hall, school, college, church, hotel, other public building, or private habitation, in, on, or near any aircraft, railway passenger train, car, vessel engaged in carrying passengers for hire, or other public place ordinarily passed by human beings is guilty of a felony, and shall be punishable by imprisonment in the state prison for a period of not more than ten (10) years."

We note that all of these sections, including some language from section 94-8-223, have been correlated by the 1976 legislature into the present sections 94-8-209.1, 209.2, 209.3, 209.4, and 209.5, R.C.M. 1947. The former section 94-8-223 was expressly repealed by the 1976 legislature, but the repeal was not effective at the time of the conduct charged.

Defendant argues that since the sections overlap, it is only logical to conclude that the more recent statutes show a legislative intent to repeal the older statute.

The state argues that generally statutes will not be held to be repealed by implication, Wymont Tractor & Equipment Co. v. Unemployment Compensation Commission (1954), 128 Mont. 501, 278 P.2d 208, unless they are "wholly inconsistent and incompatible". Teamsters Local 45 v. Montana Liquor Control Board (1970), 155 Mont. 300, 471 P.2d 541. And where, as here, one statute is more specific than the other, they are to be read together and harmonized if possible. Stadler v. City of Helena (1912), 46 Mont. 128, 127 P. 454. While there is certainly overlap among the statutes relating to criminal conduct by the use of explosives, section 94-8-223 is the most specific in describing the offense, the type of explosive prohibited, and the location of the explosive. We find no merit to this argument.

The last issue concerns the constitutionality of section 94-8-225, R.C.M. 1947. Finally, defendant challenges the constitutionality of section 94-8-225, which was used as a jury instruction at the trial. This section provided:

> "Sale and manufacture of Maxim silencers and various explosives for wrongful use a felony--possession presumptive evidence of what. The possession of any Maxim silencer or bomb of any kind, or chemical compounds intended only for the destruction of life or property, shall be presumptive evidence that the same are intended to be used in the destruction of or injury to property or life, within the meaning of this act."

Defendant contends that this presumption shifts the burden of proof of lack of intent to the defendant, in contravention of the due process clause of the Fourteenth Amendment. The recent case of Patterson v. New York (1977), ____ U.S. ____, 97 S.Ct. 2319, 53 L Ed 2d 281, discussed a line of cases regarding the shifting of the burden of proof in a criminal case, such as In re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L Ed 2d 368, and Mullaney v. Wilbur (1975), 421 U.S. 684, 95 S.Ct. 1881, 44 L Ed 2d 508. The Supreme Court in Patterson concluded:

> "Mullaney surely held that a state must prove every ingredient of an offense beyond a reasonable doubt, and that it may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense. * * * Such shifting of the burden of persuasion with respect to a fact which the State deems so important that it must be either proved or presumed is impermissible under the Due Process Clause." 53 L Ed 2d 295.

Defendant argues that this language is controlling because the effect of the statute is to shift the burden of showing lack of intent to defendant upon the mere showing of possession of the explosive device.

Patterson and other cases have permitted facts to be proven by presumptions if:

(1) There is a "rational connection" between the fact proved and the ultimate fact presumed, Tot v. United States (1943), 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L Ed 1519; or

(2) It can be said that the presumed fact "is more likely than not" to flow from the proven fact.

The most recent statement by the Supreme Court on this issue came in Barnes v. United States (1973), 412 U.S. 837, 93 S.Ct. 2357, 37 L Ed 2d 380. The Court in Barnes upheld a presumption used as a jury instruction, that possession of recently stolen property, unexplained, was known by the person in possession to have been stolen. The Court held:

> " * * * What has been established by the cases, however, is at least this: that if a statutory inference submitted to the jury as sufficient to support conviction satisfies the reasonable-doubt standard (that is, the evidence necessary to invoke the inference is sufficient for a rational juror to find the inferred fact beyond a reasonable doubt) as well as the more-likely-than-not standard, then it clearly accords with due process." 37 L Ed 2d 386.

In this case the proven fact is: "The possession of any Maxim silencer or bomb of any kind, or chemical compounds intended only for the destruction of life or property".

The inferred fact is: " * * * that the same are intended to be used in the destruction of or injury to property or life, within the meaning of this act."

Ultimately, the issue here is the relationship between proven fact and the inferred fact. At the strictest due process standard, if the existence of the proven fact would convince a rational juror of the existence of the inferred fact beyond a reasonable doubt, the statute comports with due process.

In considering the above issue we find that although much of appellant's argument was directed at the alleged failure on the part of the state to prove intent, counsel failed to present to the Court a transcript of the trial below. Without that transcript it is impossible for this Court to consider his argument that the jury did not follow the court's instruction No. 11. To now argue that the jury might have decided the case on some other theory is untenable. This Court will not reverse the findings of the jury and

judgment of the trial court without a more adequate record than was presented in this case.

Judgment affirmed.


_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

_____
Hon. R.D. McPhillips, District
Judge, sitting in place of Mr.
Justice Frank I. Haswell.