STATE OF MONTANA EX REL. ARNOLD H. OLSEN, PLAINTIFF AND APPELLANT, v. PUBLIC SERVICE COMMISSION, ET AL, AND THE MOUNTAIN STATES TELEPHONE & TELEGRAPH COMPANY, DEFENDANTS AND RESPONDENTS.

No. 9417.
Submitted November 22, 1954. Decided March 7, 1955.
Amended on Denial of Rehearing May 11, 1955
283 Pac. (2d) 594.

Arnold H. Olsen, Atty. Gen., C. W. Leaphart, Jr., Asst. Atty. Gen., William F. Crowley, Asst. Atty. Gen., for appellant.

Corrette, Smith & Dean, Butte, Loble & Loble, & Gene A. Picotte, Helena, for Mt. States Tel. & Tel. Co.

James B. Patten, Edwin S. Booth, Sec. Counsel, Helena, for Public Service Commission.

Mr. Olsen, Mr. Leaphart, Mr. Lester H. Loble, Mr. Henry Loble, Mr. Robert D. Corette and Mr. Booth argued orally.

MR. JUSTICE ANGSTMAN:

This action was brought seeking determination as to whether certain intra-state rates for telephone service ordered by defendant Commission after hearing are reasonable and lawful.

Plaintiff's second amended complaint was stricken on motion of defendants, without leave to amend, and judgment of dismissal was entered from which plaintiff appealed.

The first point urged by plaintiff is that the court erred in not sustaining plaintiff's motion to strike defendants' demurrers to the first amended complaint, it being plaintiff's contention that defendants have no right to file a demurrer to the complaint and thus to postpone the time when the case shall be at issue.

Reliance is placed on that part of R.C.M. 1947, section 70-128, reading: "The commission and other parties defendant shall file their answer to said complaint within thirty days after the service thereof, whereupon such action shall be at issue and stand ready for trial upon twenty days' notice to either party."

The same contention under a statute practically identical with  the above quoted part of section 70-128 was made in the

case of Wisconsin Hydro Elec. Co. v. Public Ser. Comm'n, 234 Wis. 627, 291 N.W. 784, 786, and the court held against the contention by saying: "However, we see no reason why the commission may not properly demur to a complaint upon grounds which raise only questions of law that are preliminary to a consideration of the case upon the merits." We agree with the Wisconsin court in this respect. As to the contention that this results in the delay of the trial it is sufficient to say that it is proper for the court to extend the time for answering and hence for the trial as it did here for a reasonable time after disposition of the demurrer.

Plaintiff's second contention is that the court erred in sustaining the motions to strike the second amended complaint. The motions were upon the grounds that the second amended complaint did not amend the first amended complaint and that it was sham and frivolous.

The amendments made by the second amended complaint which will be alluded to more fully later herein, had to do with the question of who is plaintiff in the action and whether plaintiff is a party interested and as such entitled to maintain the action.

Paragraph V of the first amended complaint alleged: "That the plaintiff herein is and was the duly elected qualified and acting Attorney General for the State of Montana * * *".

Paragraph V then continued with this allegation: "* * * and as such represents the State and many public and state institutional users of telephone service furnished by the Mountain States Telephone and Telegraph Company, and is dissatisfied with the Order No. 2396 of Docket No. 4064 of the Public Service Commission granting and approving the application for increased rates of the defendant company as said schedule of rates, tolls and charges are therein set forth."

The second amended complaint eliminates the last above quoted paragraph and substitutes in lieu thereof the following: "* * and has brought and is maintaining the above entitled action in behalf of the State of Montana and the people of Mon-

tana, for the purpose of protecting the interests of the State and the people of Montana, users of telephone service, from an unwarranted, unlawful and unreasonable increase in rates awarded to defendant company by defendant commission's Order No. 2396 of Docket 4064; that the plaintiff Attorney General, State of Montana and people of Montana are dissatisfied with the unlawful and unreasonable Order No. 2396 of Docket 4064 made by defendant commission granting and approving the application for increased rates of the defendant company, as said schedule of rates, tolls and charges are therein set forth.''

Likewise in paragraph VI after referring to the hearing before the commission there was added in the second amended complaint the following: ''That at the above mentioned public hearing, the plaintiff herein appeared and protested in behalf of the State of Montana and people of Montana against the increase in rates applied for by the defendant company. That the plaintiff there asserted and still asserts the rates granted and sought are adverse to the interests of the State of Montana and the people of Montana.''

Likewise in the second amended complaint paragraphs X and XI were added reading:

''X. That Order No. 2396 of Docket 4064 is injurious to the public users, the State and people of Montana, and against their pecuniary interests in that by this order the defendant company is enabled to obtain from the Montana users an additional revenue of $1,288,300 annually.

''XI. That the evidence introduced by the defendant company did not support such an increase, and did not indicate that the financial stability and integrity of the defendant company was imperiled in any way by the rate structure existing prior to said rate order.''

The rule is, an amended pleading which is substantially a repetition of a former pleading may be stricken. Collisaw v. American Smelting & Ref. Co., 121 Mont. 196, 190 Pac. (2d) 673, and authorities therein cited.

Striking a pleading is a harsh remedy and should be resorted

■ to sparingly and every fair intendment will be indulged in favor of the pleading. Collishaw v. American Smelting & Ref. Co., supra; 71 C.J.S., Pleading, section 450, pages 897, 898.

The fact that additional allegations were made in the second amended complaint, standing alone, is not sufficient to place the court in error in striking it.

Unless the additional allegations have some relevancy and pertinency to the statement of a cause of action, they do not, save the pleading from proper attack by motion to strike.

Hence, it becomes material and necessary to determine whether the new and additional allegations help plaintiff in the statement of a cause of action. Solution of this question depends upon the rights, powers and duties of the attorney general.

R.C.M. 1947, section 82-401, enumerates the duties of the attorney general and so far as material here provides: "It is the duty of the attorney general: 1. To attend the supreme court and prosecute or defend all causes to which the state, or any officer thereof, in his official capacity, is a party * * *."

This case having originated in the district court at the instigation of the attorney general, R.C.M. 1947, section 82-401, subdivision 1, gives no authority for him to institute the action there. Rather, R.C.M. 1947, section 16-3101 provides who may commence an action in the district court on behalf of the state. That section makes it the duty of the county attorney to "Attend the district court and conduct, on behalf of the state, all prosecutions for public offenses and represent the state in all matters and proceedings to which it is a party, or in which it may be beneficially interested, at all times and in all places within the limits of his county * * *."

However paragraph 5 of section 82-401, supra, gives the attorney general supervisory power over county attorneys and paragraph 8 of section 16-3101, supra, makes it the duty of the county attorney when ordered or directed by the attorney general to "institute and diligently prosecute in the proper court, and in the name of the state of Montana, any criminal or civil action or special proceeding," and provides that the

supervisory power of the attorney general shall extend to "all matters pertaining to the duties" of the county attorney. Likewise paragraph 7 gives him the right "When required by the public service, or directed by the governor, to assist the county attorney of any county in the discharge of his duties." None of the foregoing statutes authorized the institution of an action in the district court by the attorney general on behalf of the state. Rather they specifically state that such an action must be brought by the county attorney of the county.

However this court has repeatedly held that the attorney general has common-law powers and duties.

In State ex rel. Nolan v. District Court, 22 Mont. 25, 55 Pac. 916, 917, this court said: "The Attorney General is the principal law officer of the state. His duties are general. His authority is co-extensive with public legal affairs of the whole community."

In State ex rel. Ford v. Young, 54 Mont. 401, 170 Pac. 947, 948, the court had before it the question whether the attorney general could institute abatement or injunction proceedings to close buildings used as common brothels or bawdy-houses when the controlling statutes provided that "the county attorney must, or any citizen of the county may" maintain an action in equity for that purpose "in the name of the state of Montana upon the relation of such county attorney or citizen."

The court answered that the attorney general could bring such action saying in part: "The office of Attorney General is of ancient origin. The powers and duties appertaining to it were recognized by the common law, and the common law has been a part of our system of jurisprudence from the organization of Montana territory to the present day. Bannack Statutes, page 356; Compiled Statutes, page 647; Revised Codes, section 3552. In this state the office of Attorney General is created by our state Constitution (sec. 1, Art. VII), which also provides that the incumbent of the office 'shall perform such duties as are prescribed in this Constitution and by the laws of the state.' The Constitution enumerates certain duties, and section 193, Re-

vised Codes, certain others, and then concludes by imposing upon the Attorney General 'other duties prescribed by law.' It is the general consensus of opinion that in practically every state of this Union whose basis of jurisprudence is the common law, the office of Attorney General, as it existed in England, was adopted as a part of the governmental machinery, and that in the absence of express restrictions, the common-law duties attach themselves to the office so far as they are applicable and in harmony with our system of government.'' In speaking of the effect of the statute making it the duty of the county attorney to suppress the nuisances named, the court said: "It does not create a new remedy, but makes certain the extent of the relief obtainable. It does not supplant the attorney general as a proper party who may invoke the remedy on behalf of the state, but extends the law by conferring upon the private citizen the right, and upon the county attorney the duty, to suppress the particular nuisances mentioned, by the restraining process of a court of equity.''

The Ford Case is in line with the rule generally.

In discussing the powers of the attorney general the court in Darling Apartment Co. v. Springer, 25 Del. Ch. 420, 22 A. (2d) 397, 403, 137 A.L.R. 803, 811, had this to say: "The authorities substantially agree that, in addition to those conferred on it by statute, the office is clothed with all of the powers and duties pertaining thereto at common law; and, as the chief law officer of the State, the Attorney General, in the absence of express legislative restriction to the contrary, may exercise all such power and authority as the public interests may from time to time require. In short, the Attorney General's powers are as broad as the common law unless restricted or modified by statute.''

A general statement of the duties of the attorney general is found in 5 Am. Jur., Attorney General, section 6, page 235, as follows: "Moreover, it is generally held that the attorney general, in addition to the powers and duties conferred and imposed upon him by statute, is clothed and charged with all the common-

law powers and duties pertaining to his office as well, except in so far as they have been expressly restricted. The duties of the office are so numerous and varied that it has not been the policy of the state legislatures to attempt specifically to enumerate them; and it cannot be presumed, therefore, in the absence of an express inhibition, that the attorney general has not such authority as pertained to his office at common law. Accordingly, as the chief law officer of the state, he may, in the absence of some express legislative restriction to the contrary, exercise all such power and authority as public interests may, from time to time, require, and may institute, conduct, and maintain all such suits and proceedings as he deems necessary for the enforcement of the laws of the state, the preservation of order, and the protection of public rights.'' To the same general effect is 7 C.J.S., Attorney General, section 5, page 1222.

''The common-law duties of the attorney general, as chief law officer of the state, when not restricted or limited by statute, are very numerous and varied. In England, the Attorney General was the chief legal adviser of the Crown and was intrusted with the management of all legal affairs and the prosecution of all suits, civil and criminal, in which the Crown was interested. * * * Such being the nature of the rights and duties that attached to the position at its inception, it is generally held that in the exercise of his common-law powers, an attorney general may not only control and manage all litigation in behalf of the state, but he may also intervene in all suits or proceedings which are of concern to the general public.'' 5 Am. Jur., section 5, page 234, 235. And see 7 C.J.S., Attorney General, section 8, page 1226.

''Obviously there can be no dispute as to the right of an attorney general to represent the state in all litigation of a public character. The attorney general represents the public and may bring all proper suits to protect its rights.'' 5 Am. Jur., Attorney General, section 8, page 238.

Is the instant action one which affects the public interests or which has for its purpose the protection of public rights?

The fact that defendant Telephone Company is a public utility presupposes that its business is effected with a public interest.

Its rates and charges could not be regulated or controlled if its business were not affected with a public interest. H. Earl Clack Co. v. Public Service Comm'n, 94 Mont. 488, 22 Pac. (2d) 1056; New State Ice Co. v. Liebmann, 285 U.S. 262, 52 S. Ct. 371, 76 L.Ed. 747.

In the early case of Munn v. Illinois, 94 U.S. 113, 24 L.Ed. 77, 84, the court referred to the common-law of England as stated by Lord Chief Justice Hale to the general effect that property such as that used by a public utility was affected with a public interest and hence subject to regulations as to prices and rates and said: "Property does become clothed with a public interest when used in a manner to make it of public consequence, and affect the community at large. When, therefore, one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use; but, so long as he maintains the use, he must submit to the control."

That case established the rule that the business of common carriers and public utilities is affected with a public interest.

Later cases adhere to that principle. Wolff Packing Co. v. Court of Industrial Relations, 262 U.S. 522, 67 L.Ed. 1103, 27 A.L.R. 1280; Tyson & Bro.-United Theatre Ticket Offices v. Banton, 273 U.S. 418, 47 S.Ct. 426, 71 L.Ed. 718.

The action taken by the attorney general questioning the reasonableness and lawfulness of the rate is a proceeding affecting public interests and properly maintainable by him.

"If, in his judgment, there is good cause to believe that any public service corporation, the regulated and fixed charges of which for services rendered to the public under its franchise have been disregarded, or that unreasonable, extortionate, and excessive charges have been made for public service, it becomes

his duty as a member of the executive department of the state to institute proceedings before the judicial department of the government whereby the rights of the state, exercised in behalf of all the people, may be preserved and vindicated. This is a well-recognized power and duty of such an officer both in England and in this country.'' State v. Pacific Express Co., 80 Neb. 823, 115 N.W. 619, 623, 18 L.R.A., N.S., 664. And compare Attorney General v. Chicago & M. Ry., 35 Wis. 425; Attorney General v. Old Colony R., 160 Mass. 62, 35 N.E. 252, 22 L.R.A. 112; Hart v. Atlanta Terminal Co., 128 Ga. 754, 58 S.E. 452.

Hence public interest being affected the state is a party in interest and the attorney general under the broad powers given him by the common law may represent the state in the litigation. Furthermore, aside from the public interest generally, allegations are made to the effect that the state and its institutions are required to pay what is alleged to be an unlawful and unreasonable rate. That is sufficient to show the interest of the state. United States v. Public Utilities Comm'n, 80 U.S. App. D.C. 227, 151 F. (2d) 609. The state being an interested party it is generally ruled that the attorney general is the proper party to determine the necessity and advisability of undertaking or prosecuting actions in its behalf. 5 Am. Jur., Attorney General, section 10, page 239, and see State ex rel. Peterson v. City of Fraser, 191 Minn. 427, 254 N.W. 776.

It is contended that since the attorney general is the attorney for the commission he may not take action questioning its decisions.

This is not a new thing in the judicial history of this state. The attorney general formerly was a member of the state board of equalization and yet brought court proceedings against the board to compel the making of certain assessments. State v. State Board of Equalization, 56 Mont. 413, 185 Pac. 708, 186 Pac. 697, and see State ex rel. Dunbar v. State Board of Equalization, 140 Wash. 433, 249 Pac. 996.

This same contention under similar fact situations was made

in the case of Petition of Public Service Coordinated Tranport, 5 N.J. 196, 74 A. (2d) 580, 586, and there held to be without merit. The court there said: "This concept of the positions of the Attorney General and the Board on this appeal is a mistaken one. Clearly the Board is not here under attack; the appeal is in no way directed against it. As the court stated in Public Service Interstate Transporation Co. v. Board of Public Utility Commissions, 129 N.J.L. 94, 95, 28 A. (2d) 199 (E. & A. 1942), wherein the Board itself sought to take an appeal: 'We are clear that it has no status as such. It is in no sense a party whose interests are adversely affected, but obviously a subordinate statutory tribunal which made a legal decision reviewable by *certiorari* like those of other special statutory tribunals.' The Board is not a party to this proceeding and its prerogatives are not being usurped by the Attorney General. To hold otherwise would be tantamount to holding that a trial court is a party to an appeal from a judgment entered therein, or that the Legislature is a party to a proceeding in which the constitutionality of a statute is contested."

The mere fact that the commission is named a party to the ▮▮▮ proceeding as declared by our statute, R.C.M. 1947, section 70-128, does not call for a different conclusion from that reached by the New Jersey court. It is not the real party in interest. It has no financial interest in the outcome of the proceeding.

In the New Jersey case the governor had ordered the attorney general to take the steps which he did, but we think in this state no such order either from the governor or the board of examiners or any other board is necessary as a condition precedent to action on the part of the attorney general, which he deems necessary or advisable to protect the interests of the state and the public.

In Muench v. Public Service Comm., 261 Wis. 492, 53 N.W. (2d) 514, 55 N.W. (2d) 40, the court rejected the contention that the state could not intervene in an action through the attorney general because it was the duty of the public service

commission and not the attorney general to represent the state.

While the statutes are not the same, what was said in Attorney General v. Trustees of Boston El. R. Co., 319 Mass. 642, 67 N.E. (2d) 676, 685, has application here. It was there said: "The Attorney General represents the public interest, and as an incident to his office he has the power to proceed against public officers to require them to perform the duties that they owe to the public in general, to have set aside such action as shall be determined to be in excess of their authority, and to have them compelled to execute their authority in accordance with law."

Since the second amended complaint is an attempt in apparent good faith to meet the objection lodged against the first amended complaint wherein the court in ruling on the demurrer thereto stated, "the Attorney General is not the real party in interest herein." it should not have been stricken where as here it contained a fuller and more explicit statement of the facts relied on to show the interest of the state and the public and where it contained matter material and relevant to a statement of a cause of action.

We may say that the complaint is not definite that the state is the party plaintiff. The allegation that "plaintiff is the duly elected, qualified and acting Attorney General" is tantamount to a direct allegation that he, the attorney general is plaintiff.

As a matter of fact what he evidently intended was to allege that relator is the duly elected, qualified and acting attorney general. That however, is a matter that may be cured by amendment and the court, if relying on that point, should have granted leave to further amend rather than to dismiss the action without leave to amend.

The contention is made that the complaint is defective in not alleging that this action was commenced by a party in interest within the meaning of R.C.M. 1947, section 70-128.

The second amended complaint as above noted alleged that

at the hearing before the commission "the plaintiff herein appeared and protested in behalf of the State of Montana and people of Montana against the increase in rates applied for by the defendant company."

This allegation is likewise indefinite as to who the plaintiff is. Here again the word "plaintiff" was evidently intended to mean "relator". In construing pleadings the rule is that whatever is necessarily implied in, or is reasonably to be inferred from, allegations is to be taken as directly averred. Clem v. Clem, 97 Mont. 570, 36 Pac. (2d) 1034; Griffiths v. Thrasher, 95 Mont. 210, 26 Pac. (2d) 995; Johnson v. Johnson, 92 Mont. 512, 15 Pac. (2d) 842; Mining Securities Co. v. Wall, 99 Mont. 596, 45 Pac. (2d) 302.

Liberally construed the above allegation is sufficient to admit proof that the State of Montana, through the attorney general's office, appeared before the commission and protested the increase in rates sought so as to constitute it a party in interest within the meaning of R.C.M. 1947, section 70-128. This conclusion is not altered by the fact that at the hearing the following appearance was made: "C. W. Leaphart, Assistant Attorney General, Helena, Montana, appearing for the Attorney General's Office as Assistant Attorney General". The amended pleading tenders the issue that the attorney general's office, no matter who appeared on behalf of the attorney general, was in fact appearing on behalf of the State of Montana.

The judgment is reversed and the cause remanded with directions to set aside the order sustaining, and to enter an order denying the motions to strike and allowing defendants a reasonable time within which to further plead to plaintiff's second amended complaint.

MR. CHIEF JUSTICE ADAIR, and ASSOCIATE JUSTICES ANDERSON and BOTTOMLY, concur.

MR. JUSTICE DAVIS, not participating.