456 P.2d 177

Phil L. HANSEN, Attorney General of the State of Utah, Plaintiff and Appellant,

v.

Haven J. BARLOW et al., individually and as members of the 37th Utah State Legislature comprising the Utah Legislative Council, Defendants and Respondents.

No. 11230.

Supreme Court of Utah.

June 20, 1969.

Bryce E. Roe and Ollie McCulloch, Special Asst. Attys. Gen., Salt Lake City, for plaintiff and appellant.

Rex J. Hanson and Merlin R. Lybbert, of Hanson & Baldwin, Salt Lake City, for defendants and respondents.

CALLISTER, Justice:

The former State Attorney General, Phil L. Hansen, in his official capacity, initiated a declaratory judgment action to determine the constitutionality of the 1967 amend-

48

ments to Sections 36–4–12 and 36–4–7, U.C.A.1953, insofar as they provided for payment of a per diem and expenses to the members of the Legislative Council and authorized the Council to employ a staff and fix their salaries. The court below granted a motion to dismiss the action for the reason that the Attorney General had no standing to bring the action and was therefore not a proper party plaintiff.

This appeal presents an issue of first impression in this jurisdiction: Does the Attorney General have the right to challenge the constitutionality of a statute enacted by the State Legislature? The answer to this question depends, necessarily, upon the meaning and interpretation of constitutional and statutory provisions pertinent thereto.

Section 78–33–2, U.C.A.1953, provides:

Any person * * * whose rights, status or other legal relations are affected by a statute * * * may have determined any question of construction or validity arising under the * * * statute * * * and obtain a declaration of rights, status or other legal relations thereunder.

Article VII, Sec. 1, of our Constitution provides:

The Executive Department shall consist of Governor, Secretary of State, State Auditor, State Treasurer, and Attorney General, * * * They shall perform such duties as are prescribed by this Constitution and as may be prescribed by law.

Article VII, Sec. 18, provides:

The Attorney General shall be the legal adviser of the State officers, and shall perform such other duties as may be provided by law.

There is a division of authority as to the power of state attorneys general to bring an action such as this. However, a marked majority are in favor of such a procedure. This view has been expressed by the Montana Supreme Court in State ex rel. Olsen v. Public Service Commission: [1]

However, this court has repeatedly held that the attorney general has common-law powers and duties.

*   *   *   *   *   *

* * * The office of Attorney General is of ancient origin. The powers and duties appertaining to it were recognized by the common law, and the common law has been a part of our system of jurisprudence from the organization of Montana territory to the present day [2]

---

[1]. 129 Mont. 106, 283 P.2d 594, 598 (1955). This case is of particular significance because of the similarity between the constitutions of Montana and Utah.

[2]. See Late Corporation of the Church of Jesus Christ of Latter-Day Saints v. United States, 136 U.S. 1, 62, 10 S.Ct. 792, 34 L.Ed. 478, 497 (1890), wherein the court observed: "* * * But it is

* * * In this state the office of Attorney General is created by our state Constitution (sec. 1, Art. VII), which also provides that the incumbent of the office "shall perform such duties as are prescribed in this Constitution and by the laws of the State," The Constitution enumerates certain duties, * * * and then concludes by imposing upon the Attorney General "other duties prescribed by law." It is the general consensus of opinion that in practically every state of this Union whose basis of jurisprudence is the common law, the office of Attorney General, as it existed in England, was adopted as a part of the governmental machinery, and that in the absence of express restrictions, the common-law duties attach themselves to the office so far as they are applicable and in harmony with our system of government * * *.

In discussing the powers of the attorney general the court in Darling Apartment Co. v. Springer, 25 Del.Ch. 420, 22 A.2d 397, 403, 137 A.L.R. 803, 811, had this to say:

"The authorities substantially agree that, in addition to those conferred on it by statute, the office is clothed with all of the powers and duties pertaining thereto at common law; and, as the chief law officer of the State, the Attorney General, in the absence of express legislative restriction to the contrary, may exercise all such power and authority as the public interests may from time to time require. In short, the Attorney General's powers are as broad as the common law unless restricted or modified by statute."

Wilentz v. Hendrickson [3] is a case specifically in point, which explains the underlying theory to support the power of the attorney general to attack the constitutionality of a statute. The court observed:

It is suggested that the attorney general lacked offical authority to file the information. The office of attorney general is of ancient origin. The attorney general in England was appointed by letters patent from the crown, and under the common law he was the chief law officer and legal adviser of the crown upon whom devolved the management of its legal affairs and the prosecution of all suits, civil and criminal, in which the crown was interested. [Citations omitted.] Upon the organization of

apparent from the language of the organic act, * * * that it was the intention of congress that the system of common law and equity which generally prevails in this country should be operative in the territory of Utah, except as it might be altered by legislation * * *. In view of these significant

provisions, we infer that the general system of common law and equity, as it prevails in this country, is the basis of the laws of the territory of Utah * * *."

3. 133 N.J.Eq. 447, 33 A.2d 366 (1943), affirmed 135 N.J.Eq. 244, 38 A.2d 199 (1944).

governments in this country most, if not all, of the commonwealths which derive their system of jurisprudence from England, adopted in their governments the office of attorney general. The governmental prerogatives are here vested in the people,[4] and there was immediately recognized a similar necessity in our governments for the creation of a public officer charged with the official authority and obligation to protect the public rights and enforce public duties by proper proceedings in the courts of justice. With the office came all the common-law duties and all the power and authority appertaining to the office at the common law in so far as they were applicable and in harmony with our system of government. The common-law duties, unless abridged by the constitution or legislative enactment of the state, are very numerous and diversified. [Citations omitted.]

\*     \*     \*     \*     \*     \*

In Attorney General v. Delaware & B. B. R. Co., 27 N.J.Eq. 631, Dixon, J., remarked: "In equity as in the law court, the Attorney-General has the right, in cases where the property of the sovereign or the interests of the public are directly concerned, to institute suit, by what may be called civil information, for their protection. The state is not left without redress in its own courts because no private citizen chooses to encounter the difficulty of defending it, but has appointed this high public officer, on whom it has cast the responsibility and to whom, therefore, it has given the right of appearing in its behalf and invoking the judgment of the courts on such questions of public moment."

In the more pertinent case of Wilson, Attorney General, v. State Water Supply Commission, 84 N.J.Eq. 150, 154, 93 A. 732, 734, Justice Garrison declared:

"Short of compiling a treatise from sources equally available to all, it must suffice to say that the legal jurisdiction of the Chancellor centered around two fundamental conceptions—the impeccability of the sovereign and the righteousness of his purposes toward his subjects. The king could do no wrong, and the Chancellor was the keeper of his conscience. From those conceptions it followed that, if a subject was wronged by the king, the chancellor would redress it, and that, if all of the king's subjects suffered from an act unlawfully done in his name, the Chancellor, upon being so informed, would see that right was done.

\*     \*     \*     \*     \*     \*

4. See Constitution of Utah, Art. I, Sec. 2: "All political power is inherent in the people; and all free governments are founded on their authority for their equal protection and benefit, and they have the right to alter or reform their government as the public welfare may require."

"With few exceptions, however, the redress of public injuries in the name of the king was instituted by the Attorney General by an information which, as the name imports, merely informed the Chancellor of the existence and nature of the public wrong; it being considered beneath the dignity of the king to pray for relief in his own courts, and also that the keeper of his conscience had but to be informed of a public wrong in order to right it.

"Confining our attention to cases resembling in principle the one now before us, the essentials of this jurisdiction were that the information should be exhibited by the Attorney General as the representative of the sovereign and that it should refer to matters by which the public or public rights were affected by unlawful acts done in the name of the king or by some agency or instrumentality of his government.

"These essentials of jurisdiction, being fundamental principles of the common law, survived the changes wrought by the Revolution, and exist in this country as a part of the common law, excepting where altered by constitutions or legislative enactments of which in this state there is no trace."

It has not been regarded as anomalous for the attorney general of our state to file informations ex officio challenging the constitutionality of acts of the legislature. (Citations omitted)

Indeed, it was held by the Supreme Court of Florida in State ex rel. Landis v. S. H. Kress & Co., 1934, 115 Fla. 189, 155 So. 823, that if the attorney general conceives that a statute involving the general public interests is unconstitutional, it is not only his right, but his duty to institute ex officio appropriate proceedings to settle the validity of the legislative act.

\*　　\*　　\*　　\*　　\*　　\*

The information in the present cause was properly filed by the attorney general by virtue of the inherent authority of his office.

The court in State ex rel. McKittrick v. Missouri Public Service Commission [5] advanced another theory to sustain the common-law powers of the attorney general. The court stated:

The Constitution, Sec. 1, Art. V, Mo. R.S.A., merely provides generally that the Attorney General "shall perform such duties as may be *prescribed by law*," (save as to certain administrative duties on State Boards, etc.). The italicized phrase, "prescribed by law," by the weight of authority means, prescribed by *statute* law. 33 Words and Phrases, Perm. Ed., p. 413. However, we have long had a statute, now Sec. 645, adopt-

5. 352 Mo. 29, 175 S.W.2d 857, 861 (1943).

ing the common law of England and all statutes and acts of Parliament made prior to the fourth year of the reign of James the First, which are of a general nature, not local to that kingdom, and not repugnant to or inconsistent with the Constitution of the United States and the Constitution and statutes of this State in force for the time being.[6] This section evidently has been construed as adopting not only the common-law rights and remedies of litigants, but also such common-law *powers* of public officers as were possessed by similar officers in England—either that, or else we view the English common law, statutes and history as aids to interpretation. For it has been held in a majority of the states, including Missouri, that the Attorney General does have common-law powers.[7]

There is one other aspect which must be considered. In an earlier line of cases, the courts of the State of Washington appeared to hold that there were no common-law powers conferred upon the attorney general, at least, where the legislature had seen fit to confer the power or duty ordinarily exercised at common law by the attorney general upon another person.[8] However, in State v. Taylor[9] the court cited Article III, Sec. 21, of the Constitution of Washington: "The attorney general shall: (1) Appear for and represent the state before the courts in all cases in which the state is interested; * * *" The court observed that R.C.W. 43.10.030 (1) authorizes the attorney general to bring an action in the courts, if a cognizable common law or statutory cause of action can be stated.

6. See Sec. 68-3-1, U.C.A.1953: "The common law of England so far as it is not repugnant to, or in conflict with, the Constitution or laws of the United States, or the Constitution or laws of this state, and so far only as it is consistent with and adopted to the natural and physical conditions of this state and the necessities of the people hereof, is hereby adopted, and shall be the rule of decision in all courts of this state."

7. In addition to the cases cited from Montana, Delaware, New Jersey, Florida, and Missouri, the following courts have also found that the attorney general has common law powers (this list is by no means inclusive of all jurisdictions which have so held); however, only Illinois holds that the legislature cannot strip him of any of this common law powers and duties as the legal representative of the

state: Slezak v. Ousdigian, 260 Minn. 303, 110 N.W.2d 1, 5 (1961); State ex rel. Patterson for Use and Benefit of Adams County v. Warren, 254 Miss. 293, 180 So.2d 293, 299 (1965); Pierce v. Superior Court, 1 Cal.2d 759, 37 P.2d 453, 460, 461, 96 A.L.R. 1020 (1934); State ex rel. Fowler v. Moore, 46 Nev. 65, 207 P. 75, 76, 22 A.L.R. 1101 (1922); Gibson v. Kay, 68 Or. 589, 137 P. 864, 866 (1914); Padgett v. Williams, 82 Idaho 28, 348 P.2d 944, 948 (1960); State v. Finch, 128 Kan. 665, 280 P. 910, 913, rel. Barrett v. Finnegan, 378 Ill. 387, 38 N.E.2d 715, 717 (1941).

8. State ex rel. Attorney General v. Seattle Gas & Electric Co., 28 Wash. 488, 68 P. 946, 70 P. 114, 115; State ex rel. Dunbar v. State Board of Equalization, 140 Wash. 433, 249 P. 996, 998.

9. 58 Wash.2d 252, 362 P.2d 247, 86 A.L.R. 2d 1365 (1961).

Section 67–5–1, U.C.A.1953, provides:

It is the duty of the attorney general: (1) To attend the Supreme Court of this state, and all courts of the United States, and prosecute or defend all causes to which the state or any officer, board or commission thereof in an official capacity is a party; *and he shall have charge as attorney of all civil legal matters in which the state is in anywise interested.* (Emphasis added.)

This statute alone, if accorded an interpretation similar to that of the Washington court, would provide an adequate basis for the attorney general to initiate a declaratory judgment action where he believes a statute is in direct contravention to some mandatory provision of the Constitution of Utah.[10]

After consideration of our Constitution, statutes and decisions of sister courts, we are of the opinion that it is within the right of the Attorney General, if not his duty, to bring suits to clarify the constitutionality of laws enacted by the Legislature if he deems it appropriate. He is in a much more informed, duty-entrusted, and advantageous position to do so than the individual citizen and taxpayer.

Reversed and remanded for consideration upon the merits. No costs awarded.

CROCKETT, C. J., and TUCKETT, and ELLETT, JJ., concur.

HENRIOD, J., does not participate herein.

10. See Art. I, Sec. 26: "The provisions of the Constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."