The plaintiffs in the original case are subscribers for health care benefits with Blue Cross and Blue Shield of Alabama ("Blue Cross"). They brought a class action seeking a declaratory judgment and an order directing refunds of excess reserves alleged to be held by Blue Cross. The plaintiffs claimed that Blue Cross had "accumulated an illegal and/or excessive profit and/or reserve and surplus in excess of the amount allowed by statute in Alabama, or required for the solvency of the plan" and that Blue Cross's board of directors was not a representative cross-section of the population, as is required by statute.
Blue Cross moved to dismiss the complaint, alleging, among other things, that the subscribers had failed to exhaust administrative remedies in the Alabama Insurance Department and had failed to join the Alabama Insurance Department. In response to the motion, the subscribers amended their complaint and added the Insurance Department as a defendant.
In March 1989, the circuit court entered orders certifying the plaintiffs' class; directing the Insurance Department to perform *Page 677 
certain tasks under certain procedural rules and to report to the court; entering partial summary judgment in favor of the plaintiffs; and denying all other pending motions. The partial summary judgment in favor of the plaintiffs was entered by the trial judge on the issue of liability, i.e., he held as a matter of law that Blue Cross was illegally calculating reserves.
Blue Cross filed a petition for writ of mandamus or prohibition or both, in the Court of Civil Appeals. Mike Weaver, as Commissioner of Insurance, in June 1989 filed an appeal or, in the alternative, a petition for a writ of mandamus from the Court of Civil Appeals to vacate the trial court's order.
Attorney General Don Siegelman filed a motion on October 12, 1989, in the Court of Civil Appeals to dismiss the appeal and the alternative petition for writ of mandamus brought by the Department of Insurance. Briefs were filed and oral argument was held on November 14, 1989, in the Court of Civil Appeals on the issue of control of litigation of the Insurance Department. The Court of Civil Appeals granted the motion to dismiss, ruling that the attorney general has the power to manage and control all litigation on behalf of the State of Alabama and all of its departments.
The petition for writ of mandamus before us seeks to vacate the decision of the Court of Civil Appeals. We must determine whether the attorney general of the State of Alabama has the authority to move to dismiss the State Insurance Department's proceedings in the Court of Civil Appeals over the objection of the commissioner of insurance.
It is instructive to look at the history of the office of attorney general:
 "The office of attorney general had its nascence in the attornatus regis of the thirteenth and fourteenth century England.[1] The attornatus regis
served as the sovereign's primary legal representative, with considerable power subject to limitation only by the King. The office was carried over to colonial America, where it eventually became the office of attorney general. All fifty states have an office of attorney general created either by constitution or statute. The specific powers and duties vested in the office vary greatly among the states. Although some states restrict the attorney general's common-law powers by express statutory or constitutional language, the large majority of states have chosen to recognize the existence of these powers.[2]
 "The most far-reaching of the attorney general's common-law powers is the authority to control litigation involving state and public interests. It is generally accepted that the attorney general is authorized to bring actions on the state's behalf.[3] As the state's chief legal officer, 'the attorney-general has power, both under common law and by statute, to make any disposition of the state's litigation that he deems for its best interest. . . . [H]e may abandon, discontinue, dismiss or compromise it.'[4] In addition to having authority to initiate and manage an action, the attorney general may elect not to pursue a claim or to compromise or settle a suit when he determines that continued litigation would be adverse to the public interest.[5]
 "Most courts have given the attorney general 'a broad discretion . . . in determining what matters may, or may not, be of interest to the people generally.'[6] The investment of such discretion is based on the premise that the attorney general should act on behalf of the public interest, or as the 'people's attorney.' In an early North Carolina Supreme Court decision, the court refused to interfere with the attorney general's use of his discretionary power to enter a nolle prosequi on grounds that the authority had not been used 'oppressively.'[7] Other courts have left undisturbed the use of the power to control litigation as long as the attorney general's actions are not arbitrary, capricious, or in bad faith.[8] *Page 678 
Note, "Tice v. Department of Transportation: A Declining Role for the Attorney General?" 63 N.C.L.R. 1051 at 1053-54 (1985).
Next, we look at the Alabama Constitution of 1901, which created the office of attorney general. Article V of the Alabama Constitution of 1901 creates the executive department of the State of Alabama. "The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries and a sheriff for each county." Art. V, Sec. 112. All of these officers, with the exception of the sheriff for each county, are elected at large by the qualified electors of the state. Art. V, Sec. 114.
Article V provides that "[t]he supreme executive power of this state shall be vested in a chief magistrate, who shall be styled 'The Governor of the State of Alabama.' " Art. V, Sec. 113. "The governor shall take care that the laws be faithfully executed." Art. V, Sec. 120. The commissioner of insurance argues that the Governor has the right under the Constitution to hire counsel other than the attorney general to represent the commissioner. He contends that under the Constitution of Alabama the actions of the Governor have a higher sanction than the actions of the attorney general, since the Governor is the state's chief magistrate.
Article V, Sec. 137, of the Alabama Constitution of 1901, as amended by Amendment 111, sets forth the general duties of the attorney general of Alabama:
 "Sec. 137. The attorney general . . . shall perform such duties as may be prescribed by law. . . . The attorney general . . . shall not receive to [his] use any fees, costs, perquisites of office or other compensation than the salaries prescribed by law, and all fees that may be payable for any services performed by such officers shall be at once paid into the state treasury. The legislature may require the attorney general to defend any or all suits brought against the state, or any subdivision thereof, or against any state school board or state board of education, or against any county or city school board or board of education, or against like boards or commissions by whatever name designated, or against any members, officers or employees of any such boards, or against any school official or employee throughout Alabama."
Code of Alabama 1975, § 36-15-1, sets forth the duties of the attorney general. These include the following:
 "The attorney general shall keep his office at the capitol and perform the following duties:
". . . .
 "(3) He must attend, on the part of the state, to all criminal cases pending in the supreme court or court of criminal appeals, and to all civil actions in which the state is a party in the supreme court or court of civil appeals. He shall also attend to all cases other than criminal that may be pending in the courts of Montgomery county, in which the state may be in any manner concerned, and when required to do so by the governor in writing, shall appear in the courts of other states or of the United States, in any case in which the state may be interested in the result."
Further statutory authority is given to the attorney general in § 36-15-21: *Page 679 
 "All litigation concerning the interest of the state, or any department thereof, shall be under the direction and control of the attorney general, and the employment of any attorneys for the purpose of representing the state or any department thereof shall be by the attorney general with the approval of the governor, but nothing in this section shall prevent the governor from employing personal counsel, whose compensation shall be payable out of the governor's contingent fund."
The commissioner contends that the power of the attorney general to direct and control litigation is tempered by the language "with the approval of the governor." However, when § 36-15-21 is closely read, it is apparent that the approval of the Governor is necessary only for the employment of outside counsel to represent a department. In other words, if private counsel is to be hired to represent a state agency, that counsel must be employed by the attorney general with the approval of the Governor. Section 36-15-21 does allow the Governor to hire personal counsel for himself.
The Alabama Insurance Code provides as follows: "The attorney general shall assign to the department an assistant attorney general who shall render to the commissioner such legal services as may be required." § 27-2-11. The commissioner argues that the power given to the attorney general to control "all litigation" in § 36-15-21 is tempered and limited by the requirement of § 27-2-11 that the attorney general provide to the Insurance Department such legal services "as may be required." Therefore, he argues, the attorney general does not have the power to dismiss the appeal of the commissioner of insurance.
The attorney general argues in response that the authority to control litigation affecting the interest of the state is vested in him pursuant to § 36-15-1(3) and § 36-15-21, Code of Alabama 1975. He contends that the attorney general must have control of litigation in order to avoid confusion and the chaos of state agencies suing each other. The attorney general cites the Court to State ex rel. Carmichael v. Jones, 252 Ala. 479,41 So.2d 280 (1949). In that case the attorney general brought a mandamus action to compel the trial court to enter a consent judgment in a case pending between the State Department of Revenue and several defendants. The question presented was whether the attorney general was authorized and empowered to settle a pending suit by the State filed by him in his official capacity for the collection of an unliquidated tax claim, by taking a consent judgment in the cause for less than the amount sued for and claimed to be due by the revenue department. This Court held "that the attorney general, as the chief law officer of the state, was fully empowered to make any bona fide disposition of the cause as in his judgment might be deemed to be to the best interest of the state, unless inhibited by organic law." 252 Ala. at 485, 41 So.2d at 285.
By so holding, this Court rejected the argument of the revenue department that § 139 proscribed the attorney general from making such a settlement:
 "In coming to this conclusion we thus rationalize. The attorney general is a constitutional officer, the chief law officer of the state, and on him are conferred various authorities and duties in connection with instituting and prosecuting, in the name of the state, suits and other proceedings at law and in equity for the preservation and protection of the rights and interests of the state (Constitution, §§ 112, 137), and if § 139 were intended to so abridge his general authority over lawsuits instituted by him by subjecting his decisions in such matters to another executive head, not necessarily learned in the law, we think it should have said so by more specific language.
 "The following provisions in the Code imposing various duties and conferring various powers on the attorney general are persuasive to this view: Code 1940, Title 55, §§ 228, 229, 234, 235, 236, 240, 244. We take particular notice of § 244 [now § 36-15-21], which in effect provides that all litigation concerning the interest of the state or any department *Page 680 
thereof shall be under the direction and control of the attorney general. Taking into consideration the scope of authority and duty imposed on him by these statutes, we do not think they were intended to mark the limits or bounds of his authority, but to indicate certain specific duties and confer certain definite authority in the instances mentioned. Indeed, we intimated as much in McDowell v. State, 243 Ala. 87, 89, 8 So.2d 569, 570, where it was observed:
 "'We can perceive of no good reason why the express statutory authority of the Attorney General to institute and prosecute suits should not carry with it the implied authority to do all things necessary and proper to their final conclusion. * * * '
 "The stronger current of opinion affirms that the attorney general's powers are as broad as the common law unless restricted or modified by statute. . . .
". . . .
 "We also observe an interesting text to like effect in 5 American Jurisprudence 240, § 11:
 "'Ordinarily the attorney general, both under the common law and by statute, is empowered to make any disposition of the state's litigation which he deems for its best interest. His power effectively to control litigation involves the power to discontinue if and when, in his opinion, this should be done. Generally, therefore, the attorney general has authority to direct the dismissal of proceedings instituted in behalf of the state. * * *'"
Id., 252 Ala. at 484, 41 So.2d at 284.
The commissioner argues that Carmichael is not controlling. He cites us to American Benefit Life Ins. Co. v. Ussery,373 So.2d 824 (Ala. 1979), wherein this Court held that the attorney general could not be a legal representative of the commissioner of insurance as receiver unless so requested. However, that case is readily distinguished from the present case. In American Benefit Life Ins. Co., the commissioner was acting in his capacity as a court-appointed receiver of an insolvent insurance company. "A receiver is a representative or arm of the court." Id. at 828, quoting Sullivan Timber Co. v.Black, 159 Ala. 570, 48 So. 870 (1909). "When the Commissioner acts as receiver, his primary obligations are to the policyholders, the court, and the creditors of the insolvent insurance company." 373 So.2d at 828. In the present case the commissioner is not a receiver acting under the auspices of a circuit court; he is the head of a department of state government.
A related case was decided by the United States District Court for the Southern District of Alabama. Mobil Oil Corp. v.Kelley, 353 F. Supp. 582 (S.D.Ala. 1973), affirmed, 493 F.2d 784
(5th Cir. 1974), cert. denied, 419 U.S. 1022, 95 S.Ct. 498,42 L.Ed.2d 296 (1974). In that case, Mobil Oil Corporation filed an application with the Alabama Oil and Gas Board for a permit to drill a well at a location in Mobile Bay that the corporation had leased from the State of Alabama. Until the filing of that application, such permits had been issued routinely by the Oil and Gas Board. The then-attorney general of Alabama, William Baxley, as attorney for both the director of conservation and the Oil and Gas Board, publicly announced his objection to the drilling in Mobile Bay, and advised the Oil and Gas Board that he would fight it.
In holding that an injunction requested by Mobil Oil was not warranted, Chief Judge Pittman stated:
 "The Attorney General of the State of Alabama has not unreasonably nor unlawfully interfered with the activities of the State Oil and Gas Board or the United States Corps of Engineers. He has wide discretion in determining what actions he should take in protecting what he conceives to be the best interest of the State of Alabama and the citizens thereof. The actions taken by him in the case at hand were an exercise of that discretion and in fulfillment of the duties of the office."
Id. at 586.
The Supreme Court of Massachusetts addressed the question "whether the power of the Attorney General to establish a coherent *Page 681 
legal policy for the Commonwealth includes the authority to chart a course of legal action which is opposed by the administrative officers he represents." Feeney v. Commonwealth,373 Mass. 359, 366 N.E.2d 1262, 1265 (1977). This was a certified question from the United States Supreme Court and involved the attorney general's right to prosecute an appeal to that Court. The Supreme Court of Massachusetts held that the attorney general was acting within his authority in prosecuting an appeal to the Supreme Court of the United States, despite the opposition voiced by the State officers whom he represented and their refusal to consent to the appeal. 373 Mass. at 368,366 N.E.2d at 1267. "Where, in his judgment, an appeal would further the interests of the Commonwealth and the public he represents, the Attorney General may prosecute an appeal to the Supreme Court of the United States from a judgment of the District Court over the expressed objections of the State officers he represents." Id.
The Supreme Court of Massachusetts reasoned as follows:
 "The role of the Attorney General when he represents the Commonwealth and State officers in legal matters is markedly different from the function of the administrative officials for whom he appears. Not only does the Attorney General represent the Commonwealth as well as the members of the Commission and the Personnel Administrator in accordance with G.L. c. 12, § 3, '[h]e also has a common law duty to represent the public interest. . . . [Citations omitted.] Thus, when an agency head recommends a course of action, the Attorney General must consider the ramifications of that action on the interests of the Commonwealth and the public generally, as well as on the official himself and his agency. To fail to do so would be an abdication of official responsibility.' Secretary of Administration Fin. v. Attorney Gen., 367 Mass. 154 at 163, 326 N.E.2d 334 at 338 (1975). It would also enervate the Legislature's clearly articulated determination to allocate to the Attorney General complete responsibility for all the Commonwealth's legal business. To permit the Commission and the Personnel Administrator, who represent a specialized branch of the public interest to dictate a course of conduct to the Attorney General could effectively prevent the Attorney General from establishing and sustaining a uniform and consistent legal policy for the Commonwealth. Ibid.
". . . .
 "The authority of the Attorney General, as chief law officer, to assume primary control over the conduct of litigation which involves the interests of the Commonwealth has the concomitant effect of creating a relationship with the State officers he represents that is not constrained by the parameters of the traditional attorney-client relationship. The language of G.L. c. 12, § 3, its legislative history and the history of the office indicate that the Attorney General is empowered when he appears for State officers to decide matters of legal policy which would normally be reserved to the client in an ordinary attorney-client relationship. Secretary of Administration Fin. v. Attorney Gen., supra, 367 Mass. at 159, 326 N.E.2d 334. . . ."
Feeney v. Commonwealth, 373 Mass. 359 at 365-66,366 N.E.2d 1262 at 1266. The Massachusetts Supreme Court went on to say that the power to formulate legal policy for the Commonwealth of Massachusetts "may not be used in an arbitrary, capricious or illegal manner." 373 Mass. at 368, 366 N.E.2d at 1267. The Court in Feeney found no evidence that the attorney general's conduct was of this nature. Id.
This Massachusetts Supreme Court decision explains the unusual nature of the office of the attorney general and the reason that that office is empowered to control the litigation of state agencies. It further recognizes that the attorney general's relationship to the heads of state agencies is not the ordinary attorney-client relationship.
The commissioner argues that the attorney general should be disqualified from representing the commissioner of insurance *Page 682 
because, he asserts, this representation violates the Rules of Professional Responsibility of the Alabama State Bar. He argues that it is an elementary principle of legal ethics that an attorney cannot represent both sides to a dispute and that there exists a conflict of interest in the attorney general's representation of the commissioner. We do not agree.
The Supreme Court of Connecticut addressed a situation in which the attorney general represented both sides of the issue in a lawsuit concerning state agencies. Connecticut Comm'n onSpecial Revenue v. Connecticut Freedom of Information Comm'n,174 Conn. 308, 387 A.2d 533 (1978). In that case, the attorney general had appeared for both the Connecticut Commission on Special Revenue and the Freedom of Information Commission of Connecticut. The trial judge had ordered the attorney general to withdraw on the grounds of conflict of interest, citing Canon 5 of the Code of Professional Responsibility and Disciplinary Rule 5-105(A), (B), and (D), as well as Matthew 6:24 ("no man can serve two masters") in so holding. The Supreme Court of Connecticut rejected this argument, which is identical to the argument advanced here by the commissioner. The Connecticut Supreme Court ordered the trial court to allow the attorney general to represent both agencies, finding that assistant attorneys general could appear for the agencies.
Similarly, the Supreme Court of Mississippi considered the power of the attorney general to appear as counsel for the State of Mississippi (as intervenor) in an appeal, while at the same time controlling the legal representation of the Mississippi Public Service Commission. The court stated:
 "Considering our scheme of laws with respect to the attorney general being the chief legal officer of the State with the duty to represent the many agencies of the State and his duty to protect the public interest, we are of the opinion and hold that the majority rule will afford maximum protection to the public interest as well as afford complete legal representation to the various state agencies."
State ex rel. Allain v. Mississippi Public Service Commission,418 So.2d 779, 784 (Miss. 1982). The Mississippi Supreme Court stated the majority rule as follows:
 "The prevailing rule is that where the attorney general has common law powers, he has the inherent right to intervene in all suits affecting the public interest when he has no personal interest therein."
Id. at 783. Having adopted this rule, the Court concluded that the attorney general could, in fact, represent both sides of the case. The Mississippi Supreme Court reasoned:
 "The attorney general has a large staff which can be assigned in such manner as to afford independent legal counsel and representation to the various agencies. The unique position of the attorney general requires that when his views differ from or he finds himself at odds with an agency, then he must allow the assigned counsel or specially appointed counsel to represent the agency unfettered and uninfluenced by the attorney general's personal opinion. If the public interest is involved, he may intervene to protect it."
Id. at 783. See Public Utility Comm'n of Texas v. Cofer,754 S.W.2d 121 (Tex. 1988); contra City of York v. PennsylvaniaPublic Utility Commn, 449 Pa. 136, 295 A.2d 825 (1972).
The United States District Court for the Northern District of Mississippi in Wade v. Mississippi Cooperative ExtensionService, 392 F. Supp. 229 (N.D.Miss. 1975), considered the question that was phrased by Chief Judge Keady as follows:
 "Today we are called upon to decide a delicate but highly significant question of state law — whether in a case of undeniable statewide interest the Attorney General of the State of Mississippi has authority to assume defense of an action against the Board of Trustees of State Institutions of Higher Learning (the Board), an autonomous and constitutional state agency which wishes instead to *Page 683 
retain private counsel to represent its official interests."
Id. at 231. After reviewing the Mississippi statute,[1] the federal district court held:
 "We hold that the Board is without power to engage counsel in this cause, to represent its official interests independently, and over the objection of the State's Attorney General, and the Attorney General's motion to strike is hereby sustained."
Id. at 235.
The Supreme Court of Illinois addressed a similar question inEnvironmental Protection Agency v. Pollution Control Bd.,69 Ill.2d 394, 14 Ill.Dec. 245, 372 N.E.2d 50 (1977). The question presented was whether a state agency could employ private counsel to represent it and have the fees paid by the attorney general in the absence of an appointment of counsel by the attorney general or by the court. The Supreme Court of Illinois stated:
 "[I]t is sufficient to observe that this court has consistently held, under both the 1870 and 1970 constitutions that the Attorney General is the chief legal officer of the State; that is, he or she is the law officer of the people, as represented in the State government, and its only legal representative in the courts. (Fergus v. Russel (1915), 270 Ill. 304, 337, 110 N.E. 130, 143, which is the seminal case; Stein v. Howlett
(1972), 52 Ill.2d 570, 289 N.E.2d 409). Although there has been criticism of this virtually exclusive grant of power to the Attorney General, this court has not wavered from that view, and critics recognize this is the law. (Comment, The Illinois Attorney General: Exclusive Legal Counsel for the State? 1975 U.Ill.L.F. 470 (176-178).)"
69 Ill.2d at 398-399, 14 Ill.Dec. at 246, 372 N.E.2d at 51. The Illinois Supreme Court went on to say that "[t]he Attorney General's responsibility is not limited to serving or representing the particular interests of state agencies, including opposing state agencies, but embraces serving or representing the broader interests of the State."69 Ill.2d at 401, 14 Ill.Dec. at 248, 372 N.E.2d at 53. See also People exrel. Scott v. Briceland, 65 Ill.2d 485, 3 Ill.Dec. 739,359 N.E.2d 149 (1977).
The Supreme Court of North Carolina had before it a declaratory judgment action to determine the duties of the governor and the attorney general in connection with lawsuits filed against the State. Martin v. Thornburg, 320 N.C. 533,359 S.E.2d 472 (1987). In that case the governor and the attorney general of North Carolina took different legal positions. The North Carolina Supreme Court sought to determine whether the duty of the attorney general to appear for the State in any proceeding in which the State may be a party, as provided for in N.C.G.S. § 114-2(1), violates Article III, § 1, of the North Carolina Constitution. Article III, § 1, provides that "[t]he executive power of the state shall be vested in the Governor." The court concluded that the duties of the attorney general as prescribed by statutory and common law include the duty to appear for and to defend the State or its agencies in all actions in which the State may be a party or be interested. Therefore, the attorney general could determine the procedural steps necessary to protection of the state's interest in the action. The North Carolina Supreme Court noted that it found support in the following general statement of law:
 "In the absence of explicit legislative expression to the contrary, the attorney general possesses entire dominion over every civil suit instituted by him in his official capacity . . ., and his authority extends as well to control of defense of civil suits against the state, its agencies, *Page 684 
and officers. 7A C.J.S. Attorney General § 12 (1980)."
320 N.C. at 546, 359 S.E.2d at 479.
Article V, Sec. 137, of the Alabama Constitution provides: "The attorney general . . . shall perform such duties as may be prescribed by law." It has been suggested that this wording restricts the authority of the attorney general. However, this is not the general rule. The Supreme Court of Utah inHansen v. Barlow, 23 Utah 2d 47, 456 P.2d 177 (1969), adopted the reasoning of the Supreme Court of Montana in State ex rel.Olsen v. Public Service Commn, 129 Mont. 106, 283 P.2d 594
(1955), as to the general rule. The Utah Supreme Court noted that Article VII, Sec. 18 of the Utah Constitution provides: "The Attorney General shall be the legal adviser of the State Officers and shall perform such other duties as may be provided by Law." 23 Utah 2d at 48, 456 P.2d at 178. This section of the Utah Constitution is similar to Article V, Sec. 137, of the Alabama Constitution. The Utah Supreme Court, as the Montana Supreme Court had done, reasoned that this language, rather than limiting the powers of the attorney general, grants the attorney general the powers that were held by him at common law:
 "It is the general consensus of opinion that in practically every state of this Union whose basis of jurisprudence is the common law, the office of attorney general, as it existed in England, was adopted as a part of the governmental machinery, and that in the absence of express restrictions, the common-law duties attach themselves to the office so far as they are applicable and in harmony with our system of government."
Hansen v. Barlow, 23 Utah 2d 47, 456 P.2d 177, 178 (1969).
Finally, the commissioner argues that he has been denied the due process of law guaranteed by the Fourteenth Amendment of the United States Constitution and Article I, Section 6, of the Alabama Constitution. We reject this argument on the authority of State of South Carolina v. Katzenbach, 383 U.S. 301, 324,86 S.Ct. 803, 816, 15 L.Ed.2d 769, 784 (1966), citingInternational Shoe Co. v. Cocreham, 246 La. 244, 266,164 So.2d 314, 322 n. 5, cert. denied, 379 U.S. 902, 85 S.Ct. 193,13 L.Ed.2d 177 (1964). Mike Weaver is a party to this suit as commissioner of insurance, not as an individual.
We have carefully reviewed the law and the precedents in this case. The overwhelming authority supports the decision of the Court of Civil Appeals that the attorney general has the power to manage and control all litigation on behalf of the State of Alabama. We hold that the attorney general of the State of Alabama has the authority to move to dismiss the State Department of Insurance's proceedings in the Court of Civil Appeals over the objection of the commissioner of insurance.
We recognize that there may be times when the Governor disagrees with the attorney general about matters in litigation. Although we determine that the attorney general is authorized to direct the course of all litigation involving the State and its agencies, the Governor, as "chief magistrate" of the State,[2] may intervene in any such litigation. Rule 24, A.R.Civ.P. As an intervenor,[3] the Governor may express his views and take positions contrary to those argued by the attorney general.
The writ of mandamus is denied.
WRIT DENIED.
HORNSBY, C.J., and JONES, ALMON and ADAMS, JJ., concur.
MADDOX, HOUSTON and STEAGALL, JJ., dissent.
[1] For a more detailed description of the development of the Office of Attorney General from its origins in England through the colonial period, see Committee on the Office of Attorney General, the National Association of Attorneys General, Common Law Powers of State Attorneys General, at 68 (1980).
[2] See COMMON LAW POWERS, supra note 1, at 25-27 (identifying 35 states in which the attorney general is recognized as having common-law powers).
[3] Edmisten, The Common Law Powers of the Attorney General ofNorth Carolina, 9 N.C.Cent. L.J. 1, at 10 (1977).
[4] State v. Finch, 128 Kan. 665, 671, 280 P. 910, 912 (1929).
[5] Secretary of Admin. Fin. v. Attorney Gen., 367 Mass. 154,326 N.E.2d 334 (1975). . . .
[6] Mundy v. McDonald, 216 Mich. 444, 450, 185 N.W. 877, 880
(1921).
[7] State v. Thompson, 10 N.C. (3 Hawks) 613, 614 (1825).
[8] See e.g. Feeney v. Commonwealth, 373 Mass. 359,366 N.E.2d 1262 (1977) (discretionary power not to be used in arbitrary or capricious manner); Cooley v. South Carolina Tax Comm'n,204 S.C. 10, 28 S.E.2d 445 (S.C. 1943) (Attorney General found to have acted in good faith)."
[1] The Mississippi statute states in relevant part: "The attorney general . . . shall be the chief legal officer and advisor for the state, both civil and criminal, and is charged with managing all litigation on behalf of the state. No arm or agency of the state government shall bring or defend a suit against another such arm or agency without prior written approval of the attorney general. He shall have the power of the attorney general at common law and is given the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide interest." Wade v.Mississippi Cooperative Extension Service, 392 F. Supp. 229, 231
n. 2 (N.D.Miss. 1975).
[2] Ala. Const. 1901, § 113.
[3] The Governor may appear through counsel employed pursuant to §36-13-2 or the last clause of § 36-15-21, Code 1975.